UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| ARNOLD FRIEDMAN, individually and on behalf of all others similarly situated,       Plaintiffs, | ) ) ) Case No. 2:06-cv-00687 UA-DNF ) |
| v. | ) ) |
| WHITNEY INFORMATION NETWORK INC., RUSSELL A WHITNEY, RONALD S. SIMON, ALFRED R. NOVAS, JOHN F. KANE, NICHOLAS S. MATURO, RANCE MASHECK, and EHRHARDT KEEFE STEINER & HOTTMAN PC Defendants. | ) ) ) ) ) ) ) ) ) ) |
| _____/ | |

**DEFENDANT EHRHARDT KEEFE STEINER & HOTTMAN PC'S MOTION TO
DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Defendant Ehrhardt Keefe Steiner & Hottman PC ("EKS&H"), by its undersigned counsel, pursuant to Fed.R.Civ.P. Rule 8, 9 and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(b), submits this Motion to Dismiss and Supporting Memorandum of Law and respectfully requests that this Court dismiss all claims of the [Second] Consolidated Amended Class Action Complaint ("SAC") [Dkt. 96] asserted against EKS&H, *with prejudice,* and in support states as follows:

LAW OFFICES OF

**SLK**

STEPHENS LYNN KLEIN
LA CAVA & PUYA, P.A.

# I.    Introduction

Plaintiffs filed this purported securities fraud class action against Whitney Information Network, Inc. ("Whitney" or the "Company"), six current or former officers or directors (the "Individual Defendants") (collectively the "Whitney Defendants"), and EKS&H, Whitney's independent auditors, alleging violations of §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78(a) et seq., ("the 1934 Act") and SEC Rule 10b-5.[1][2]

In its Order of November 17, 2008 [Dkt. 95] ("Dismissal Order"), this Court struck the [First] Consolidated Amended Class Action Complaint ("FAC") due to pleading problems that have long concerned the Eleventh Circuit and the U.S. Congress in securities fraud cases. Specifically,

> [w]hile Plaintiff's Complaint is very long and very detailed, Plaintiff fails to connect the relevant facts to the elements of each claim. Therefore, the Court is unable to determine if Plaintiff has stated a claim with the requisite particularity required by Rule 9(a) and the PSLRA [Dismissal Order at p. 4].

However, Plaintiffs have not taken the striking of the FAC by this Court, or the repeated admonitions of the Eleventh Circuit and Act of Congress to heart. Plaintiffs have again submitted a complaint that fails to satisfy Fed.R.Civ.P. 8(a). Despite some cosmetic changes and elimination of redundancy and fluff, the pleading is as deficient as before under *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) and Fed.R.Civ.P. 8(a). In addition,

---

[1] The original Complaint [Dkt. 1] was filed on December 27, 2006. The [First] Consolidated Amended Class Action Complaint ("FAC") [Dkt.36] was filed on July 10, 2007. The Whitney Defendants filed their motion to dismiss the FAC on September 28, 2007 [Dkt. 51] and EKS&H filed its motion to dismiss the FAC and Supplemental Brief on January 7, 2008 [Dkt. 78] and February 6, 2008 [Dkt. 85] respectively.
[2] The FAC and the SAC also contain control person liability claims against the Individual Defendants under §20(a) of the 1934 Act.

if the Court gets past the Rule 8 (a) deficiencies, the SAC fails to comply with Fed. R. Civ. P.

9(b) and the PSLRA, warranting dismissal on those grounds .[3]

## II. Summary of the Allegations of the Second Amended Complaint (SAC)[4]

EKS&H was Whitney's independent auditor during the periods alleged in the SAC.  The

only allegations that mention EKS&H by name or by description (auditors, outside auditors, etc.)

are paragraphs 13, 14, 15, 16, 78, 82 and 114.   Essentially, the SAC alleges that EKS&H was

the auditor (¶13); that they were paid for their services (¶13); that they issued opinions on the

financial statements of Whitney (¶¶ 13 and 82); that they provided unspecified letters of consent

or made unspecified "representations regarding the accuracy and completeness of filings made

by the Company with the SEC" (¶14); that at an unspecified time EKS&H reported certain

material weaknesses to Whitney's Board (¶78); that EKS&H had access to unspecified

documents  that showed that the public statements made by the Company were false (¶15); that

EKS&H knew or disregarded with severe recklessness the adverse facts (¶16); and that EKS&H

is liable to the Plaintiff for millions of dollars (¶114).   The only factual allegations, as opposed

to legal conclusions, are that EKS&H was the auditor; they were paid for their services; they

issued opinions; and at one point they reported to the Board of Whitney that there were certain

material weaknesses in the internal controls of the Company.

Nowhere in the 67-page, 175-paragraph SAC do Plaintiffs allege any of the following:

(1) a single violation of the standards that apply to auditors (GAAS);

(2) A single violation of the rules or standards of the PCAOB;

---

[3] In addition, in their haste to re-plead and shorten their amended complaint, Plaintiffs have completely failed to allege any basis for this court's  subject matter jurisdiction, a facial deficiency which provides grounds for dismissal under Fed.R.Civ.P. 12(b)(1).  While EKS&H assumes that this was an oversight of counsel for Plaintiff, asserting the basis for this Court's jurisdiction over the claim is essential to meeting basic pleading requirements in this Court.
[4] EKS&H has provided a detailed description of the changes to the SAC and an analysis of the case law as applied to those changes.  See section III. D. *infra*.

(3) a single document that EKS&H was aware of that showed that its opinion on the financial statements was in error;

(4) a single fact that, if true, would lead to the inference that EKS&H was aware that the statements identified in the SAC were false; or

(5) a single fact that, if true would lead to the inference that EKS&H acted with any degree of scienter.

Because the SAC is so woefully deficient and devoid of any factual allegation of particularized wrongdoing by EKS&H, and any factual allegation leading to an inference of scienter, the SAC must be dismissed as to EKS&H.

### III.  Argument

**A.    The Second Amended Complaint (SAC) Still Does Not Satisfy the Pleading Standards of Fed.R.Civ.P. Rule 8 and *Wagner v. First Horizon, supra*.**

As to EKS&H, only the First Claim for Relief (primary liability under § 10(b) of the 1934 Act, and SEC Rule 10b-5) is asserted.   Despite merely being Whitney's auditor, EKS&H continues to remain lumped together with all the other Defendants with no differentiation made as to EKS&H's specific wrongdoing or specific state of mind.

In its Dismissal Order, the Court analyzed the paragraphs and pages of the FAC, explaining how the large numbers of paragraphs and pages related to the *Wagner, supra,* pleading deficiencies.   The SAC does not address the Court's concerns as applied to EKS&H. Plaintiffs are still doing what the Eleventh Circuit and Congress have long lamented—attempting to hide the legal and factual deficiencies in their case against EKS&H in a morass of vague, conclusory and non specific allegations.

The FAC (Dkt. 34) compares to the SAC (Dkt. 96) as follows:

| Comparison of the Allegations contained in the First Amended Complaint (FAC) and the Second Amended Complaint (SAC) ||
| --- | --- |
| **FAC (Dkt. 34)** | **SAC (Dkt. 96)** |
| The FAC contained allegations that this Court has subject matter jurisdiction in this case. | The SAC contains no allegations of subject matter jurisdiction. |
| "The Complaint is 112 pages containing 210 paragraphs." (Dismissal Order at 3.) | The SAC is 67 pages containing 175 numbered paragraphs. |
| "The first count begins with paragraph 197 on page 106 of the complaint." (*Id.*) | The first count has moved 180 paragraphs forward to paragraph 17 on page 7, immediately following identification of the parties, and continues on for 153 numbered paragraphs and 58 pages. |
| "Each of the two counts 'repeats and realleges each and every allegation contained' in the preceding pages." (*Id.*) "The complaint also fails to sufficiently connect the elements of the claims to the 196 paragraphs of facts preceding them." (*Id.*) | The "repeats and realleges" problem has been addressed by cramming all the factual allegations into the first count itself. The SAC continues to fail to connect the elements of the claim against EKS&H to the 58 pages and 153 numbered paragraphs of allegations. |
| The FAC contained a 12-page "Overview of the Action" that looked more like an opening statement at trial—complete with demonstrative charts—than a proper pleading under Rule 8(a). | The "Overview of the Action" has been removed as a separate section. Some of the information formerly stated therein has been incorporated into ¶ 2 under the "Nature of the Action" heading. One of the demonstrative charts has been moved to page 23. |
| The "Parties" allegations as to EKS&H were stated in ¶¶ 32-35 of the FAC. | The "Parties" allegations as to EKS&H have been restated in §§ 13-16 in the SAC. No factual allegations have been added; however, Plaintiffs did update their conclusory allegation of recklessness adding the word "severe" before the word "reckless" in paragraph 15, apparently to accommodate recent case law. Significantly, they do not add any factual allegations which if true would support their conclusory assertion. |
| There is no Table of Contents in the FAC. | Plaintiffs have supplied a 2-page Table of Contents to assist in navigating through the multitude of factual allegations that have now been crammed into the first count. EKS&H is not even mentioned in the Table of Contents. |
| There is no summary statement setting forth the elements of a claim for relief under § 10(b) of the Exchange Act and Rule 10b-5 in the FAC. | Plaintiffs have inserted ¶ 17, which unhelpfully merely recites the elements of a claim for relief under § 10(b) of the Exchange Act and Rule 10b-5. Paragraph 17 continues |

| | to assert that "all Defendants" violated the law without differentiation of EKS&H from the others. |
|---|---|
| Each claim contains paragraphs requesting damages. | There is no prayer for relief at the end of the first count. The prayer for relief at the end of the second count seeks damages but does not sort out responsibility between EKS&H as the mere auditor of the Company from the others. |
| The Class Allegations precede both Count and I and Count II. | The SAC curiously sandwiches the class action allegations between the first and second count. |
| The specific allegations as to EKS&H, as distinguished from the other defendants are made in ¶¶ 32-35, 71, 95, 96, 103, 177 and 202. | The specific allegations as to EKS&H, as distinguished from the Individual Defendants or the Company or "all Defendants" are made in ¶¶ 13-16, 78, 82, and 114. |

As the above table demonstrates, Plaintiffs' SAC is at best a cosmetic improvement over the previous pleading. Plaintiffs have again failed to comply with Fed.R.Civ.P. 8(a)(2) and (3) and this Court's Dismissal Order. Plaintiffs continue to lump EKS&H together with the Whitney Defendants in terms of alleged misstatements and omission, liability, scienter, loss causation, and damages. The specific factual allegations as to EKS&H have not changed. Plaintiffs attempt to state a complaint against all the Defendants except for EKS&H, then merely allege that EKS&H served as the Company's auditors, tagging EKS&H generally with all the conduct alleged against the other Defendants. As discussed in more detail in section III. D. *infra,* the seven paragraphs referencing EKS&H do not connect the elements of a §10(b) claim to the conduct of EKS&H.

It is clear that Plaintiffs have failed to comply with this Court's Dismissal Order as it concerns their claim against EKS&H. They have not succinctly connected the relevant facts or factual allegations with the elements of liability under § 10(b) of the Securities Exchange Act *as to EKS&H.* They have not specified which alleged misrepresentations or omissions are

attributed to EKS&H, and how those alleged misrepresentations or omissions are causally connected to Plaintiffs' alleged damages.    Thus, the SAC should be dismissed again under *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006).    However, if the Court determines that the SAC is sufficient to satisfy *Wagner*, the SAC nevertheless fails to satisfy the requirements of Rule 9(b) and the PSLRA, and should be dismissed as to EKS&H.

### B.    As to EKS&H, the Second Amended Complaint (SAC) Fails to Comply with Fed.R.Civ.P. 9(b)

Fed.R.Civ.P. 9(b) requires the pleader to plead all averments of fraud with particularity. *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194 (11th Cir. 2001) concerned a purported securities fraud class action against a public company, its attorneys, and its auditors in which the attorneys and auditors challenged the sufficiency of the complaint.    *Ziemba* was decided under Rules 9(b) and 12(b)(6).    In *Ziemba*, as in the instant case, the plaintiffs alleged that the auditors were primary actors – that is, the statements were the statements of the auditor as well as the other defendants.    In *Ziemba*, the plaintiffs had two chances to get their pleading right, whereas the Plaintiffs here are already on their third pleading.    The district court for the S.D. of Florida (Judge Nesbitt) dismissed the securities claims against the attorneys and auditors, and denied leave to re-plead.    The Eleventh Circuit affirmed.

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

> *Ziemba*, 256 F.3d at 1202.

In this case, because of the improper use of the "all Defendants" lumping mechanism, the SAC fails to satisfy the first and second requirements set forth in *Ziemba*.    The SAC also fails to

allege that Plaintiffs were misled by *EKS&H's* actions.  No reliance on *EKS&H's* actions is alleged whatsoever.  As to the fourth requirement, EKS&H gained nothing more than its ordinary fees.  If Plaintiffs' allegations here were sufficient to satisfy the fourth requirement, then plaintiffs in every case would satisfy the fourth requirement by merely alleging that the auditors didn't perform their audit for free.

The SAC is much weaker than the complaint that was dismissed with prejudice in *Ziemba*.  In *Ziemba*, the complaint at least attempted to allege facts suggesting that: (1) the auditors were aware of certain red flags; (2) the auditors allegedly violated  AICPA auditing standards; and (3) the auditors  allegedly had knowledge (or were reckless in not knowing) of certain misstatements in the company's form 10-K.  See *Ziemba* at 1200-1201.  None of these crucial factual allegations are included in the SAC in this case.

In *Ziemba,* although the court found the complaint lacking, the *Ziemba* plaintiffs at least identified some auditing standards that they believed that the auditor had failed to comply with, which, if followed, would have made the financial statements and the opinion accurate. *Ziemba*, 256 F.3d at 1208-9.  Courts have routinely held that rote allegations of violations of GAAS are insufficient to prove fraud.  *In re Sunterra Securities Litigation,* 199 F.Supp.2d 1308, 1333 (M.D. Fla. 2002); *In Re Faro Technologies Securities Litigation,* 534 F.Supp.2d 1248, 1266 (M.D. Fla. 2007).  Plaintiffs have not even tried to get over this hurdle and have failed to allege a single violation of an auditing standard, let alone a violation with enough supporting evidence to support a charge of fraud.

In *Ziemba,* the plaintiffs also attempted to point to various "red flags" that the auditor allegedly ignored when it issued its unqualified audit opinions on the public company.  However, as the *Ziemba* court pointed out at 256 F.3d at 1210:

In this case, however, Plaintiffs have not alleged any facts suggesting actual awareness by C&L of any fraud. Plaintiffs have pointed to no "tips," letters, or conversations raising inferences that C&L knew of any fraud. Furthermore, Plaintiffs have pointed to no facts suggesting that C&L was severely reckless in not knowing about any fraud.

Plaintiffs' purported "red flags" consist of C&L's alleged possession of documents and other information which Plaintiffs allege should have revealed the need for going concern qualifications in C&L's audit opinions of Fran's Fashions and Conston. At most, these allegations raise an inference of gross negligence, but not fraud.

Similarly, in *In re Recoton Corp. Sec. Litig.*, 358 F.Supp.2d 1130  (M.D. Fla. 2005), Judge Antoon held that claims against the auditors (D&T) were not plead with sufficient particularity to survive a motion to dismiss in the securities fraud context:

> The allegations against D&T fail to plead fraud with sufficient particularity. Plaintiffs do not cite any documents, testimony or evidence indicating that D & T, or any particular D&T employee, was informed or participated in Recoton's alleged wrongdoings.   Conclusory allegations that do no more than state that D&T "would have known," "knew and ignored," or "recklessly failed to know" are insufficient to state a claim under PSLRA and <u>Rule 9(b)</u>.  *In re Sunterra*, 199 <u>F.Supp.2d 1308, 1324 (M.D.Fla.2002)</u> (holding that mere allegations of "must have known" fail to pass muster under the PSLRA).   The alleged violations of GAAP and GAAS are often devoid of factual support and do little more than base each violation on the assumption that the above-mentioned allegations are true.   In any event, it is well-settled that allegations of GAAP and GAAS violations are insufficient, by themselves, to state a claim of fraud with particularity.  *Ziemba*, <u>256 F.3d at 1208-09</u> ("[A]llegations of violations of GAAS or GAAP, standing alone, do not satisfy the particularity requirement of <u>Rule 9(b)</u>.").

*In re Recoton Securities Litigation, supra* at 1147.   *Accord, Grand Lodge of Pennsylvania v. Peters*, 550 F. Supp.2d 1363, 1371-73 (M.D. Fla. 2008) (Lazzara, J.) (§10(b) claims dismissed as to auditors for failure to plead requisite particularity and scienter).

The same is true in the instant case.  There are no factual allegations in the SAC that even suggest that EKS&H, or any employee of EKS&H, had any specific knowledge of any fraud perpetrated by the Company or any of the Individual Defendants.  There are no specific factual

allegations of any red flags that EKS&H should have picked up on. Conclusory allegations that EKS&H should have known, without specific instances of how, why, and when EKS&H should have known, are insufficient.

Similarly, in *Garfield v. NDC Health Corp.*, 466 F.3d 1255 (11th Cir. 2006), the Eleventh Circuit affirmed the trial court's dismissal of securities fraud claims against the company's auditor pursuant to Rule 9(b). *Garfield,* at 1262-63. In doing so, the court adopted a common-sense approach to Rule 9(b): "A sufficient level of factual support for a [10(b)] claim may be found where the circumstances of the fraud are pled in detail. 'This means the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Garfield*, at 1262 (quoting *DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)*). As was the case in *Garfield*, Plaintiffs have failed to plead the "who, what, when, where, and how" as concerns EKS&H.

### C. As to EKS&H, the Second Amended Complaint (SAC) Fails to Comply with the Heightened Pleading Requirements of Scienter Under the PSLRA.

Rule 9(b) does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements were made. But in 1995, as "a check against abusive litigation by private parties,"[5] Congress passed the Private Securities Litigation Reform Act ("PSLRA"), Pub.L. No. 104-67, 109 Stat. 737 (1995), which made two notable changes to the pleading requirements for securities fraud class actions. First, the PSLRA altered Rule 9(b)'s particularity requirement by mandating that a securities fraud class action complaint

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

---

[5] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179 (2007).

15 U.S.C. § 78*u*-4(b)(1)(B).  Second, and more importantly, the PSLRA raised the standard for

pleading scienter.  Specifically, in any securities fraud class action

> in which the plaintiff may recover money damages only on proof that the
> defendant acted with a particular state of mind, the complaint shall, with respect
> to each act or omission alleged to violate this chapter, *state with particularity
> facts giving rise to a strong inference that the defendant acted with the required
> state of mind.*

15 U.S.C. § 78*u*-4(b)(2) (emphasis added).  The SAC fails to satisfy this standard as to EKS&H.

In *Tellabs, Inc. v. Makor Issues & Rights, Ltd., supra,* the Supreme Court analyzed the

requirement of a "strong" inference of scienter under the PSLRA, stating:

> An inference of fraudulent intent may be plausible, yet less cogent than other,
> nonculpable explanations for the defendant's conduct.  To qualify as "strong"
> within the intendment of § 21D(b)(2), we hold, an inference of scienter must be
> more than merely plausible or reasonable -- it must be cogent and at least as
> compelling as any opposing inference of nonfraudulent intent.

*Tellabs*, 127 S.Ct. at 2404-05.   Here, EKS&H, as auditor, acted in the ordinary course of

business and charged ordinary fees for auditing services.  The SAC is devoid entirely of specific

factual allegations as to EKS&H's state of mind, let alone facts that lead to a *cogent and

compelling* inference of scienter.  The paragraphs that attempt to address the state of mind of the

"defendants" collectively either make conclusory statements that the defendants acted recklessly,

or the specific allegations refer only to the other defendants' state of mind.  (See discussion in

section III. D., *infra*.)  There are simply *no* factual allegations *whatsoever* that EKS&H acted

with any degree of recklessness or intent to defraud.  As described above, Plaintiffs do not even

allege that EKS&H violated any standards applicable to auditors, let alone violations which were

so extreme as to support a cogent or compelling inference of scienter.[6]   There are no facts

alleged in the SAC from which this Court could find any inference of scienter, let alone the

---

[6] Various paragraphs of the SAC allege violations of GAAP and "SEC Reporting Rules" by "Defendants;" however, there are no violations of GAAS or PCAOB standards.   See Section III. D. *infra*.

"strong inference" required by the PSLRA and *Tellabs, supra.* There is no such cogent and compelling inference that can be drawn from the SAC. The allegations fall far short of the requirements of the PSLRA and *Tellabs*, and the SAC must be dismissed as to EKS&H.

Plaintiffs may attempt to argue that the allegations of scienter regarding the other defendants apply to EKS&H through some type of scheme liability. If that is their argument, it fails under the reasoning of the Supreme Court in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S.Ct. 761 (2008). In *Stoneridge*, the Supreme Court held under the PSLRA that a complaint must clearly allege the specific nature of the deceptive statement, reliance upon that statement, and a clear causal relationship between the reliance and the alleged harm. It is not sufficient to merely allege—as do Plaintiffs here—that a defendant participated in a general scheme to violate §10(b) with others who have made a specific misstatement, or with others who had a duty to disclose material information but failed to do so. *Stoneridge*, 128 S.Ct. at 770. Although *Stoneridge* did not concern the claims brought against the auditors, its reasoning is equally applicable where, as here, the auditors are merely secondary actors sought to be held primarily liable, and, in this case, where there are no allegations that the auditors violated auditing standards. Moreover, the Supreme Court was quite clear in its opinion that §10(b) claims must comply with the PSLRA's strict requirements, and the judiciary should enforce the clear mandates of Congress in determining whether claims meet these strict requirements.[7]

In *Garfield v. NDC Health Corp.*, *supra*, the Eleventh Circuit relied upon the PSLRA as well as Rule 9(b) in dismissing the case against the company's auditors. The *Garfield* court

---

[7] "Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud." *Stoneridge* at 771; "Section 10b does not incorporate common law fraud into federal law." *Id.*; "This restraint is appropriate in light of the PSLRA, which imposed heightened pleading requirements and a loss causation requirement upon "any private action" arising from the Securities Exchange Act. See 15 U.S.C. §78u-4(b)." *Stoneridge* at 773.

upheld the district court's dismissal because the "allegations regarding amortization and capitalization [were] vague and difficult to evaluate," did "not specify when the improper accounting occurred," and failed to allege "how and what products were improperly capitalized or amortized." *Garfield*, 466 F.3d at 1263. The Court found the complaint deficient for lack of "any detailed allegations of scienter with respect to the alleged misrepresentations." *Id.* at 1264. As to the auditors, the court upheld dismissal on the basis that the general allegations that the auditors ignored certain "red flags" did nothing more than re-hash general GAAP and GAAS violations, and did not rise to the level of specificity or scienter required by the PSLRA. *Garfield* at 1267-70. "[Plaintiff] may not establish scienter by alleging that the auditor would have discovered the fraud had it not violated GAAS." *Garfield* at 1270, (citing *In re Spear & Jackson Sec. Litig.*, 399 F.Sup.2d 1350, 1363 (M.D. Fla. 2002) and *In re Eagle Bldg. Tech. Inc. Sec. Litig.*, 319 F.Supp.2d. 1318, 1328 (S.D. Fla. 2004).[8]

In a recent Fourth Circuit decision affirming the district court's dismissal of §10(b) claims against Deloitte & Touche as a public company's auditor, the court stated:

> Thus, the question is whether the allegations in the complaint viewed in their totality and in light of all the evidence in the record, allow us to draw a strong inference at least as compelling as any opposing inference, that the Deloitte defendants either knowingly or recklessly defrauded investors by issuing false audit opinions in violation of Rule 10b-5(b) or 10b-5(a) or (c). If we find the inference that defendants acted innocently or even negligently, more compelling than the inference that they acted with the requisite scienter, we must affirm. Plaintiffs must show that the defendants actually made a misrepresentation or omission in their audit opinions on which investors relied; parties who merely assist another in violating §10(b) are not liable under §10(b). *See Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,* 128 S. Ct. 761 (2008).

---

[8]  See also,  *In re Recoton Corp. Sec. Litig.*, *supra,* at 1148-1153, also discussed in section III.B. above,  dismissing securities fraud class action against the company's auditors, holding the complaint deficient under the PSLRA as well as under Rule 9(b).

*Public Employees' Retirement Association of Colorado v. Deloitte & Touche, LLP*, __F.3d __ 2009 WL 19134 at p. 7 (4th Cir. January 5, 2009). Here, there is no doubt, that the inference drawn from the allegations in the SAC is that EKS&H acted either innocently or, at worst, negligently, but there is certainly nothing in the SAC which even hints that EKS&H knowingly or recklessly defrauded investors by issuing false audit opinions.

Plaintiffs may also attempt to argue that the fact that the Company restated its financial statements is sufficient to show that EKS&H made material misstatements. However, mere publication of restated financial statements is insufficient to create the strong inference of scienter required by the PSLRA. *In re CP Ships Ltd., Sec. Litig.*, 506 F.Supp.2d 1161, 1168 (M.D. Fla. 2007)("the issuance of a restatement, even involving a considerable change in numbers, cannot support a securities fraud lawsuit, absent other evidence of scienter.") *Accord*, *Zucco Partners, LLC v. Digimarc Corp.* __F.3d.__, 2009 WL 57081 (9th Cir. January 12, 2009) at 14; *In re Bearing Point, Inc. Sec. Litig.* 525 F. Supp.2d 759, 775 (E.D. Va. 2007); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp.2d 873, 893-5 (N.D. Ohio 2006).

### D. The Changes in the Second Amended Complain (SAC) do not Cure the Incurable Problems Under 9(b) and the PSLRA.

### 1. Sections I, II, and III of the Second Amended Complaint (SAC)

In paragraphs 1-12 of the SAC, Plaintiffs identify various categories of alleged material misstatements and omissions, and state that they are relying upon "scheme" and "course of conduct" allegations in order to ensnare EKS&H. Under the authorities cited above, such allegations are insufficient. Plaintiffs also identify their Lead Plaintiff, through whom all Class Plaintiffs derive their rights.

In ¶ 13 Plaintiffs allege that EKS&H signed the Independent Auditor's report certifying the veracity and completeness of the company's SEC filings, yet there are no factual allegations which, if true, would show that EKS&H knew, or was reckless in not knowing, that the filings were allegedly false.  Plaintiffs also allege that EKS&H was paid $1.788 million in "*purported* accounting fees and expenses."  (Italics added.)  Yet, Plaintiffs never follow up their innuendo with any specific facts  to show that the fees and expenses were not legitimate.  This is exactly the type of insufficient pleading that Rule 9(b) was intended to prevent; and when Rule 9(b) was proved insufficient, the PSLRA was passed as "a check against abusive litigation by private parties."  There is no "strong inference of scienter" in alleging that an auditing firm received fees for its services.

In ¶ 14, Plaintiffs allege that EKS&H "provided letters of consent and/or made representations regarding the accuracy and completeness of [unspecified] filings made by the Company with the SEC…" The allegations referencing the *EduTrades* public offering have nothing to do with the Lead Plaintiff's claims and should be disregarded per Rule 12(f)(1).

In ¶ 15, Plaintiffs allege generally that EKS&H "participated in the drafting, preparation, and/or approval" of the offending documents, and that "because of its role, [EKS&H] had access to the adverse undisclosed information about Whitney's business prospects and financial condition" and "knew (or disregarded with severe recklessness) that these adverse facts rendered the positive representation made by Defendants materially false and misleading."  Again, the Plaintiffs fail to back up these conclusions with any allegations of fact.  Under *Tellabs*, *Ziemba* and the cases cited in section III. B. and C. above, these conclusory allegations are insufficient to establish fraud as to EKS&H, or scienter on their part.

In ¶ 16, Plaintiffs make the conclusory allegation that by virtue of being the auditor EKS&H actually 'controlled' what was disseminated by the Company. These allegations—which are patently false—are never backed up with particularity, and thus fail to meet the requirements of 9(b) and the PSLRA. Paragraphs 17 and 18 just list the elements of a § 10(b) claim, and provide a roadmap to the SAC similar to the Table of Contents.

### 2.    Section IV.A. of the First Count, ¶¶ 19-28.

In this section, Plaintiffs generally describe alleged deceptive actions of the Company toward its customers. EKS&H is never mentioned by name or description. General allegations that "Defendants" assured investors that the Company was in compliance with GAAP and SEC reporting rules is not sufficient to state a claim for securities fraud against an auditing firm. Plaintiffs also rely upon "confidential witnesses"; however, none of these confidential witnesses have anything whatsoever to say that implicates EKS&H;[9] everything is expressly limited to the actions of Company employees. The rest of this section describes other alleged wrongdoings of Whitney, with no specificity as to how EKS&H purportedly violated § 10(b).

### 3.    Section IV.B. of the First Count, ¶¶ 29-31.

In this section, Plaintiffs generally describe how "Defendants" failed to disclose to the Company's potential customers Russ Whitney's true background, with no allegations that EKS&H was aware of the purported undisclosed information. There are no allegations that the Lead Plaintiff reviewed the allegedly false statements or relied upon them.

### 4.    Section IV.C. of the First Count, ¶¶ 32-42.

---

[9] The Eleventh Circuit addressed the issue of confidential witnesses in *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1239-42 (11th Cir. 2008) (and dismissing allegations of financial improprieties as against public company for failure to satisfy particularity requirements under PSLRA *Id.* at 1247-57). See, also, *Zucco Partners, LLC v. Digimarc Corp.*, *supra* at *13, where statements of confidential witnesses were held insufficient.

This section generally describes alleged deceptive actions of the Company toward its customers, with no allegations that in any way implicate EKS&H, or that even involve the Lead Plaintiff. These allegations sound more like a class action on behalf of the Company's customers than on behalf of the Company's investors. The only possible link of fraud-against-customers to securities fraud is by referring in ¶ 32 to the Company's Registration Statement, but there are no factual allegations against EKS&H to support liability under § 10(b).

### 5.    Section IV.D. of the First Count, ¶¶ 43-57.

In this section, Plaintiffs describe the Company's Merchant Credit Card Processing and Chargebacks, noting that the Company's reserve was raised from 1% to 5%. Plaintiffs attempt to suggest that the failure to explain this in the August 12, 2005 Form 10-Q was tantamount to securities fraud. Plaintiffs fail to allege any reliance by the Lead Plaintiff on the lack of discussion regarding the chargeback reserve. Plaintiffs fail to allege any duty EKS&H breached with regard to the chargeback reserve; they don't even allege here that EKS&H violated GAAS or other auditing standards. Instead, Plaintiffs attempt to dress up their insufficient allegations with emotional language such as: "a whopping 500%" (¶ 44); "had reached a crisis level" (¶46); the "massive sudden spike" (¶47); "illegal refusal to grant refunds" (¶48) [with no explanation whatsoever as to how the policy was "illegal"]; "the meteoric rise in chargebacks" (¶54). However, it takes more than colorful language to satisfy Rule 9(b) and the PSLRA.

### 6.    Section IV.E. of the First Count, ¶¶ 58-69.

In this section, Plaintiffs describe several press releases in which the Company attributed profits to "an aggressive campaign to test new marketing vehicles and messages," which "led to significantly improved response rates," and a "growing number of individuals who had benefited in multiple ways from [the Company's] training and ongoing support. (SAC, ¶¶ 63, 65, and 67.)

First, there are no non-conclusory, specific factual allegations that EKS&H had anything to do with the making of these statements.  Second, there is no specific factual allegation to show that these statements were false.  The Plaintiffs merely allege without any back-up that, in reality, "Defendants" had "propped up the Company's results by manipulating Whitney's accounting for revenues and income."  (SAC, ¶ 65.)  There is no reference to EKS&H as being part of the alleged propping-up.  This is nothing more than a conclusory and speculative allegation with no facts to support it.  There is no showing of loss causation by Plaintiffs, and no strong showing of scienter on the part of EKS&H.

### 7.    Section IV.F. of the First Count, ¶¶ 70-75.

In this section, Plaintiffs take issue with the Company's revenue recognition reporting in the Company's financial statements.  EKS&H is not mentioned by name or as auditor; there are no allegations that EKS&H violated GAAS or PCAOB standards with regard to its audit of the Company's financial statements.

### 8.    Section IV.G. of the First Count, ¶¶ 76-87.

This section relates to the Company's statements regarding its internal controls.  This is the first attempt to link EKS&H (as opposed to "Defendants") with any purported wrongdoing; however, the effort to state a claim against EKS&H is an abject failure.  Plaintiffs allege, without any specificity, that the Company was "concealing significant problems" (SAC, ¶ 76) but that *the CEO and CFO* evaluated the effectiveness of the internal controls (SAC, ¶ 77) and stated in the 2Q:05 Form 10-Q that they were effective.  In ¶ 78 Plaintiffs admit that EKS&H informed the Board that "certain material weaknesses existed at Whitney," and admit in that same ¶78 that *the Company* believed it had addressed the concerns raised by EKS&H.  These allegations do not create § 10(b) liability on the part of EKS&H.  Paragraph 80 alleges that two of the Company's

officers made Sarbanes-Oxley certifications, and ¶ 81 alleges in conclusory and unparticularized fashion that those officers demonstrated "a complete lack of diligence in 'reviewing' the document being signed." Paragraph 82 alleges that EKS&H stated that the consolidated financial statements fairly presented the Company's financial position in conformity with GAAP. However, the SAC does not assert that EKS&H's statement was false, was made with scienter, was relied upon by Plaintiffs or caused them any losses.

Paragraphs 85 and 86 concern the Company's Code of Ethics. Without any specificity, Plaintiffs declare that the Company violated its Code of Ethics because, in their opinion, "its entire business model was a sham, premised on the concept of luring unsophisticated students into signing up for near-worthless and unconscionably-overpriced courses," etc., etc. However, without more, these alleged discrepancies between a company's profession of principles of "honesty," "integrity," etc. and its customer perceptions as to the fairness of its actual business practices do not become a predicate for suing the company's auditors for securities fraud.

### 9.    Section IV.H. of the First Count, ¶¶ 88-92.

This section describes how the Company changed its policy for recognizing revenue and how it would restate revenues for prior periods. It then asserts without specificity that the Restatement was materially false because "Defendants" "continued their scheme to abuse its Deferred Revenue reporting as a method of artificially inflating the Company's results."[10]   No specific involvement of EKS&H is alleged. No reliance or loss causation is alleged. No strong inference of scienter on the part of EKS&H is shown.

---

[10] In this paragraph, and throughout the SAC, Plaintiffs refer to the Company's alleged "artificial inflation of deferred revenue." While there are no allegations that EKS&H recklessly violated auditing standards with regard to the company's recording of deferred revenue, these allegations are curious, at best, as this inflation of deferred revenue would result in the Company over-stating its liabilities, and there are no allegations as to how this overstating of liabilities made the Company's financial statements materially misleading to investors who purchased the stock in reliance thereon.

### 10.    Section IV.I. of the First Count, ¶¶ 93-110.

The next 18 numbered paragraphs (8 pages) concern "Defendants'" continuation of making materially false statements that ultimately boil down to a disagreement with the efficacy and ethics of the Company's business model vis-à-vis its customers.  No effort is made to particularize how EKS&H supposedly participated in issuing the various press releases and other documents described in this section.  There are only unsupported allegations that the Company's practices did not comply with GAAP and SEC reporting rules, but no details, and no allegations that EKS&H violated any auditing standards.  There is nothing stated to give rise to *any* inference, let alone a *strong* inference of scienter by EKS&H.

### 11.    Section IV.J. of the First Count, ¶¶ 111-114.

Here, Plaintiffs recite various provisions of GAAP, and allege that "Defendants" filed various documents that "Defendants" said complied with GAAP and "SEC Rules."  In ¶ 113, Plaintiffs again take issue with the efficacy and ethics of the Company's business model, and make the unsupported leap that the purported deficiencies in the business model rendered the Company's financial statement in violation of GAAP and unspecified SEC Rules.  There are no allegations that EKS&H did not follow generally accepted auditing standards.  Moreover, Plaintiffs ignore the fact that "allegations of violations of GAAS [had they even so alleged]  or GAAP, standing alone, do not satisfy the particularity requirement of Rule 9(b)."  *Ziemba*, 256 F.3d at 1208.  Never once do Plaintiffs attempt to point to any "red flags" that arguably would have converted EKS&H from a mere auditor to a de facto co-conspirator to violate the securities laws.  Rather, they merely allege in ¶ 114 that "Defendants" were manipulating refunds in violation of their Code of Ethics, that their harsh business practices impacted their revenues, and

that as auditor, EKS&H should have deemed the financials to be materially false and refused to state that the financials complied with GAAP.

### 12.    Section V.A. of the First Count, ¶¶ 115-139.

The next 10 pages and 25 numbered paragraphs is where Plaintiffs supposedly demonstrate a strong inference of scienter on the part of all "Defendants". According to the Table of Contents to the SAC, this is where the allegations to meet the requirements of the PSLRA are contained. The Table of Contents even has subheadings relating to knowledge, severe recklessness and motive. The reader will look in vain for any reference to EKS&H in these sections. There are no allegations that the documents that supposedly establish scienter were given to EKS&H, that the OSHA Complaint was reviewed by EKS&H, or for that matter, that EKS&H had any motive other than to provide its professional services. There is absolutely nothing in the SAC to satisfy the PSLRA's higher pleading standard with respect to EKS&H. It is impossible on the allegations before the Court to form a *cogent and compelling* inference of scienter on the part of EKS&H. Plaintiffs' complete failure to address EKS&H in this specific section amounts to an admission that they have nothing to support a *cogent and compelling* inference.

### 13.    Sections VI., VII., and VIII. of the First Count, ¶¶ 140-158.

Here, Plaintiffs describe the collapse of the market for Company's shares precipitated by an SEC investigation and grand jury subpoena. There are no allegations in this section that relate to compliance with 9(b) or the PSLRA. These allegations attempt to deal with loss causation and reliance, which EKS&H addresses in section III.E below.

### 14.    Section IX. of the First Count, ¶¶ 159-164.

Here, Plaintiffs discuss post-Class Period developments. Such events are, by definition, immaterial and impertinent to this case, and should be ignored under Rule 12(f)(1).

The above discussion demonstrates that the allegations in the SAC do not meet the requirements of the PLSRA or 9(b) as interpreted by the U.S. Supreme Court and the Eleventh Circuit, and thus, the claims against EKS&H must be dismissed.

### E. Plaintiffs Fail to Meet §10(b) Reliance and Loss Causation Requirements.

"In a typical 10(b) private action, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge, supra,* at 768, *quoting Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336, 3451-341 (2005). These elements must also be sufficiently alleged in the Complaint. *Dura Pharmaceuticals* at 346-7. Failure to do so requires the Complaint to be dismissed. *Dura* at 347. Both Congress in the PSLRA and the Supreme Court in *Dura* and *Stoneridge* made it clear that the Complaint must allege facts that, if true, show loss causation. See *Dura* at 347-8; *Stoneridge* at 770.

*Stoneridge* dealt with the issue of whether a §10(b) cause of action could be sustained against a public company's customers and suppliers who allegedly participated in a "scheme" with the company concerning the company's accounting treatment of contracts it had with those customers/suppliers, but who did not make any alleged misstatements or omissions.[11] In analyzing the requirements of loss causation and economic loss which are tied to the elements of reliance, the Court stated that: "Reliance by the plaintiff upon the defendant's deceptive acts is

---

[11] *Stoneridge* reaffirmed the holding in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191 (1994), as later confirmed by Congress in §104 of the PSLRA, that: "The §10(b) implied private right of action does not extend to aiders and abettors. The conduct of a secondary actor must satisfy each of the elements or preconditions for liability. ..." *Stoneridge, supra,* at 769.

an essential element of the § 10(b) private cause of action. It ensures that, for liability to arise, the "requisite causal connection between a defendant's misrepresentation and a plaintiff's "injury" exists as a predicate for liability." *Id* at 769.

Although Plaintiffs purport to rely on the fraud-on-the market theory of reliance, for the reasons stated in the Whitney Defendants' previously filed motion to Dismiss, the fraud on the market theory does not apply in this case.[12]  However, despite purported reliance on statements made in Whitney's SEC reports, the SAC must be dismissed because the alleged fraudulent statements are not causally connected to Plaintiffs' losses.  Plaintiffs allege that they relied upon misleading information about the financial condition of the company but allege that their losses were caused by two press releases that announce government investigations of Whitney (not EKS&H) into topics other than the financial statements audited by EKS&H.  There are no allegations in the SAC that any alleged misrepresentations of EKS&H caused any economic loss to the Plaintiffs.

Plaintiffs claim they suffered damages because between April 2005 and November 2006, Whitney allegedly filed SEC reports and published press releases containing favorable business and financial information, but containing material misrepresentations and omissions, causing Whitney's common stock price to be artificially inflated.[13]  Plaintiffs claim the falsity of this

---

[12] The Plaintiffs in *Stoneridge* did not attempt to utilize the fraud-on- the-market theory of reliance.  The issue in that case was whether defendants could be held liable for their participation in the scheme with the company who made the allegedly false statements upon which the plaintiffs purportedly relied.

[13] As noted in Whitney's previous Motion to Dismiss, Plaintiffs ignore the fact the market price did not fall, but in fact rose when Whitney announced in May 2006 that it would be restating some of its earlier financial statements to reflect a change in its revenue recognition policy.

information was disclosed in the November and December 2006 press releases announcing an SEC investigation and a grand jury subpoena, and, as a result, the price of Whitney stock fell.[14]

However, there is no link between the alleged misrepresentations and the resulting economic loss. These press releases do not relate *at all* to the misrepresentations or omissions purportedly made by any of the Defendants (in particular, EKS&H) upon which Plaintiffs (or the market) "relied" in establishing the price of Whitney's common stock. The November and December press releases cannot be interpreted to "correct" any materially false or misleading information which could possibly be attributed to any statement alleged to have been made by EKS&H, as there are no allegations that EKS&H made any specific misstatements or omissions. There are no allegations, and no facts that would support, that the announcement of an SEC investigation or the grand jury subpoena related to any alleged misstatements of EKS&H made during the purported class period. The announcement of the SEC investigation focused on what the company was telling its students in its seminars and classes – not what the company was telling the investing public about Whitney's financial condition. Further, announcement of the SEC investigation focused on whether the information that Whitney was providing to its students complied with federal securities laws – it did not focus on whether Whitney, in its SEC reports, was in compliance with the federal securities laws. Thus, the section of the SAC entitled "The Truth is Belatedly Revealed" (¶¶ 140-143 on page 55), actually "reveals" an entirely different "truth" than the one Plaintiffs describe in the previous 139 paragraphs and 54 pages of the SAC.

The matters announced in the SEC investigation and grand jury subpoena have nothing to do with Plaintiffs' claims that they were deceived into buying Whitney's common stock based

---

[14] On January 15, 2009, Whitney filed its form 10-K for fiscal year end 2007, and its form 10-K/A, containing restated financial statements for the years 2001-2006. These restated financial statements do not relate to the allegations in the Second Amended Complaint, or to revenue recognition. The restated financials do not cure any of the deficiencies in the Second Amended Complaint and have no bearing on this case.

on false or misleading financial information in the financial statements audited by EKS&H. There are no specific factual allegations that EKS&H was reckless, or even negligent, in auditing Whitney's financial statements. Thus, the November and December 2006 press releases do not reveal any fraud as alleged to have been perpetrated by EKS&H. There is no connection between the alleged fraud and Plaintiffs' losses. Because there is no *causal connection* to any statements or omissions of EKS&H relied upon by Plaintiffs and the resulting drop in the stock price, the SAC fails to meet the loss causation pleading requirements of the PSLRA, and should be dismissed. See *Dura Pharmaceuticals, supra,* at 347-8; *Stoneridge* at 769-70.

### IV. Conclusion

Plaintiffs have had three opportunities and several years to develop specific factual averments that, if true, would support a claim against EKS&H. Rather than taking the decisions of the Eleventh Circuit and this Court's order to heart, they have merely moved the pieces around on the chessboard and not alleged anything new. The SAC is nothing more than a cosmetic effort to avoid compliance with Rules 8, 9 and the PSLRA. This action, as to EKS&H, is precisely the type of case that Congress intended to be dismissed at this point in the proceedings.

Wherefore, Defendant EKS&H respectfully prays that the Second Consolidated Amended Complaint against EKS&H be dismissed *with prejudice*.

Respectfully submitted,

STEPHENS LYNN KLEIN
LACAVA & PUYA, P.A.
s/_____
Robert M. Klein
Sherryll Martens Dunaj
Two Datran Center, Penthouse II
9130 S. Dadeland Blvd.

25

Miami, FL  33156
Phone: (303) 670-3700
Fax:  303-670-8592
kleinr@stephenslynn.com
dunajs@stephenslynn.com

ATTORNEYS FOR DEFENDANT EHRHARDT
KEEFE STEINER &  HOTTMAN PC

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2009, the foregoing **MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW OF DEFENDANT EHRHARDT KEEFE STEINER & HOTTMAN PC** was filed with the clerk of the court and served on the following by using the CM/ECF system:

Michael A. Swick, Esq.
Kim E. Miller, Esq.
Kahn Gauthier Swick, LLC
114 East 39th Street
New York, NY  10016
kim.miller@kgscounsel.com

Maya Saxena, Esq.
Joseph E. White, III, Esq.
Saxena White P.A.
2424 N. Federal Highway, Suite 257
Boca Raton, FL  33431
msaxena@saxenawhite.com
jwhite@saxenawhite.com

Brian P. Miller, Esq.
Samantha J. Kavanaugh, Esq.
Akerman Senterfitt
One Southeast Third Avenue, 25th Floor
Miami, FL  33131
brian.miller@akerman.com
samantha.kavanaugh@akerman.com

Tracy A. Nichols, Esq.
Mara D. Aronson, Esq.
Holland & Knight, LLP
701 Brickell Avenue, Suite 3000
P.O. Box 015441
Miami, FL  33131-5441

tracy.nichols@hklaw.com
mara.aronson@hklaw.com

Morris Weinberg, Jr., Esq.
Nathan M. Berman, Esq.
Zuckerman Spaeder LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, FL  33602
sweinberg@zuckerman.com
nberman@zuckerman.com

John C. Dotterer, Esq.
John C. Dotterer Counsellors at Law, P.A.
125 Worth Avenue, Suite 310
Palm Beach, FL  33480
dottj@dottlaw.com

Richard Brualdi, Esq.
The Brualdi Law Firm
29 Broadway, Suite 1515
New York, NY  10006
rbrualdi@brualdilawfirm.com

     I further certify that the foregoing document and the notice of electronic filing were served on the following non-CM/ECF participants by first class U.S. mail:

Lewis S. Kahn, Esq.
Kahn Gauthier Swick, LLC
650 Poydras Street, Suite 2150
New Orleans, LA  70130

David Krakoff, Esq.
Alex Lakatos, Esq.
Mayer Brown LLP
1909 K Street, NW
Washington, D.C.  20006

James Doty, Esq.
Mary Spearing, Esq.
Baker Botts LLP
1299 Pennsylvania Ave., NW
Washington, D.C.  20004

                                     s/_____
                                     Sherryll Martens Dunaj