**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

| | |
|---|---|
| ARNOLD FRIEDMAN, Individually And On Behalf of All Others Similarly Situated,<br><br>               Plaintiffs<br><br>vs.<br><br>WHITNEY INFORMATION NETWORK, INC., RUSSELL A. WHITNEY, RONALD S. SIMON, ALFRED R. NOVAS, JOHN F. KANE, NICHOLAS S. MATURO, RANCE MASHECK and EHRHARDT KEEFE STEINER & HOTTMAN PC,<br><br>               Defendants. | Case No. 2:06-cv-687-FtM-34DNF |

**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANT EHRHARDT KEEFE STEINER & HOTTMAN P.C.'S MOTION TO DISMISS THE COMPLAINT**

Lead Plaintiff Dr. Arnold Friedman ("Plaintiff") respectfully submits his opposition to Ehrhardt Keefe Steiner & Hottman, P.C.'s ("EKSH" or the "Auditor") Motion to Dismiss Plaintiff's Amended Complaint filed December 8, 2008.

**PRELIMINARY STATEMENT**

On November 17, 2008, this Court entered an Order *denying* EKSH's motion to dismiss Plaintiff's Consolidated Amended Class Action Complaint filed January 7, 2008, and *denying* Defendant Whitney Information Networks, Inc. (the "Company"), and the Individual Defendants' motion to dismiss. The complaint was not dismissed on the merits, but rather merely stricken from the record in accordance with *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1278 (11th Cir. 2006).[1] The Court authorized Plaintiff to refile the amended complaint after addressing the Court's concern that "Plaintiff fails to connect the relevant facts to the elements of each claim. Therefore, the Court is unable to determine if Plaintiff has stated a claim with the requisite particularity required by Rule 9(a) and the PSLRA [Private Securities Litigation Reform Act]." Order at 4.

Plaintiff thereafter filed his operative Complaint alleging a detailed and compelling securities fraud against the Company's "independent" Auditor, the Company, and the Individual Defendants while simultaneously addressing the Court's concerns by carefully addressing each element of its Section 10(b) claim in relation to the facts necessary to plead that claim.[2] Plaintiff has adequately alleged that the Auditor made materially false and misleading statements during the Class Period (Section IV of Complaint) with scienter (Section V) upon which Plaintiff relied

---

[1] While EKSH makes it a point to consistently mislabel to the Complaint as Plaintiff's *Second* Amended Complaint, this Court's Order struck Plaintiff's Amended Complaint with leave to refile it, which Plaintiff did on December 8, 2008. Order at 5. As the Auditor well knows, there is no so-called "Second Amended Complaint." The First Amended Complaint filed July 10, 2007 is referred to as the "Now-Stricken FAC" and the First Amended Complaint refiled on December 8, 2008 is the operative "Complaint."

[2] The Section 20(a) claim is brought against the Individual Defendants. Therefore, 20(a) is addressed in the Opposition to the Company and Individual Defendants Motion to Dismiss the Consolidated Amended Class Action Complaint ("Co. Opp."). That Co. Opp. is hereby incorporated by reference into this brief.

1

(Section VIII) and which caused Plaintiff and the Class damages (Section VI-VII).

In response, the Auditor filed a slightly-revised version of its previously-filed motion to dismiss. The most notable change in EKSH's submission is that it backtracks from its position -- boldly but baselessly made in its prior motion – that the Auditor cannot be liable under the Securities Laws because there is no suggestion that "EKSH ran the company, served as officer or director, prepared the allegedly offending press releases, or audited Whitney's quarterly financials." EKSH 1/17/08 Brief at 5.[3] Preliminarily, it appears that between the filing of its initial motion to dismiss and its refiling, EKSH has taken the time to actually familiarize itself with at least some of the duties and responsibilities of an auditor of a public company, as well as to read SEC Rules 12a-10 and 15d-10, which, as noted in Plaintiff's prior opposition brief, notes that only annual financial statements are generally audited by the independent auditor. Prior Opp. at 1. However, while the Auditor no longer directly contends this time around that auditors cannot be liable for securities fraud unless they acted not only as auditors but also as directors, officers, or control persons at the Company, the fundamental misapprehension of the Securities Laws remains: the Auditor still attempts to erroneously claim that the Complaint fails to allege that it made false and misleading statements during the Class Period and therefore can only be

---

[3] Indeed, EKSH's previously filed motion to dismiss was so rife with embarrassing errors of law and fact that Lead Plaintiff was forced to include an entire Section dedicated to a discussion of said errors in its prior opposition. *See* Plaintiff's Prior Opposition to EKSH Br. ("Prior Opp.") filed February 15, 2008 (Dkt. No. 86.) at 25-26. In its current submission, EKSH continues to exhibit fundamental misunderstandings of the Securities Laws. For example, the Auditor does not appear to understand the difference between the materiality element and the scienter element of a Section 10(b) claim, strangely noting: "Plaintiffs may also attempt to argue that the fact that the Company restated its financial statements is sufficient to show that EKS&H made material misstatements. However, mere publication of restated financial statements is insufficient to create the strong inference of scienter required by the PSLRA." Br. at 14. To be sure, the restating of financials constitutes an admission that the prior financials were materially false when made. *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1338 (S.D. Fla. 1999). *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("[T]he mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made."). However, scienter is a separate inquiry, of course, under the statutory framework. In accordance with *Tellabs*, Plaintiff has pleaded abundant indicia of scienter with respect to the Auditor, as addressed herein below.

2

liable through "scheme" liability.[4] The Complaint plainly debunks this fallacy: actionable statements made by the Auditor during the Class Period include letters of consent and representations regarding the accuracy and completeness of the Company's SEC filings including signing an Independent Auditors Report certifying the filings' veracity and completeness. ¶¶13-15, 82.

Focusing on specious technicalities, EKSH conveniently ignores the overwhelming facts that abundantly support a claim for securities fraud against it: Plaintiff alleges in great detail that the Company was a sham from top to bottom—including its bogus products forced on unwitting consumers which resulted in a zero refund policy, massive GAAP violations, manipulations of revenue recognition requiring restatements, and suspiciously timed departures of no fewer than six Company executives (*including the Audit Committee Chair*). Indeed, the Complaint alleges that EKSH consciously ignored or was severely reckless in disregarding a myriad of red flags apparent from the *very day* EKSH undertook employment and continuing through extensive financial restatements and the issuance of Grand Jury subpoenas and indictments of Company employees. Indeed, EKSH became Whitney's auditor in February 2001 after a six month period of the Company juggling accounting firms and facing massive financial restatements: Whitney announced on August 2, 2000 that effective mid-August 2000 it would terminate its long time auditor Larry Legel, CPA in favor of a "larger firm," BDO Seidman. *See* Declaration of Kim E. Miller ("Miller Decl"), submitted herewith, at Exhibit A. Just three months later BDO

---

[4] EKSH claims "[a]lthough *Stoneridge* did not concern the claims brought against the auditors, its reasoning is equally applicable where, as here, the auditors are merely secondary actors sought to be held primarily liable, and, in this case, where there are no allegations that the auditors violated auditing standards." Br. at 12. This argument could not be further from the truth and is directly contrary to the Complaint. As discussed above, the Auditor is named as a 10(b) defendant for making materially false and misleading statements during the Class Period. Auditors who speak falsely are routinely named as defendants in securities fraud cases and are not mere aiders and abettors under *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994). Neither *Stoneridge* nor *Central Bank* have any relevance whatsoever to EKSH's liability and for EKSH to argue this position still suggests that they simply have no legitimate legal arguments to make and have been reduced to the repetition of red herrings.

3

terminated its relationship with the Company. Miller Decl. Exh. B. Less than a month after that, the Company announced it would be forced to restate its financials for 1998, 1999, and part of 2000. Miller Decl. Exh. C. Despite these extreme red flags, EKSH's response is to turn its back on its duties and attempt to foist the blame entirely on the shoulders of the Company and the Individual Defendants.

The Auditor continues its "blame the Company" theme by complaining that Plaintiff fails to identify "a single document that EKS&H was aware of that showed its opinion on the financial statements was in error." (Br. at 4). Putting aside that such a contention ignores that severe recklessness constitutes scienter in this Circuit and actual knowledge need not be show, this argument also blatantly ignores the auditor's basic due diligence obligations. Without a shred of discovery, Plaintiff has managed through its informal investigation to uncover crucial documentation and sources that leave little to the imagination here. The detailed allegations of a massive fraud here are undeniable. Even the most cursory review by the Auditor in the course of its duties – heightened here in the face of the numerous red flags – could not have been conducted without either uncovering the fraud or being severely reckless in failing to do so: under either scenario, the auditor is adequately alleged to have violated Section 10(b) of the Exchange Act.

In the end, the Auditor is reduced to attempting to distort this Court's order to mean that because the operative Complaint is 67 pages (down from 112 pages), this is somehow still too long and improper, without regard to the fact that Plaintiff has fundamentally restructured the pleading in accordance with the Court's instructions to make clear that the Complaint plainly meets the requirements of the PSLRA, Rule 9(b), and Rule 8.[5]

---

[5] After attempting to discount the operative pleading as mere "cosmetic changes" and the elimination of "fluff" (EKSH Br. at 2), the Auditor sets forth a table purporting to compare the Stricken Complaint to the operative

4

Finally, EKSH seems to suggest that individual reliance must be pleaded here, and that somehow whether or not Plaintiff has personally reviewed Whitney's filings is relevant. This is plainly wrong. Plaintiff has adequately pleaded that Whitney stock trades on an efficient market and that the fraud on the market doctrine applies, triggering the presumption of reliance. *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).[6]

For these reasons and those more fully stated below, EKSH has failed to carry its heavy burden under Section 12(b)(6) and, therefore, this Court should deny EKSH's motion.

**ARGUMENT**

**I. APPLICABLE LEGAL STANDARDS**

In entertaining a motion to dismiss, this Court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). As such, a complaint must merely allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Somewhat surprisingly, the Auditor does not even set forth this heavy pleading standard in its motion.

In order to plead a viable Section 10(b) claim, a plaintiff must allege (1) a material misrepresentation (or omission); (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Dura Pharm., Inc. v. Broudo,*

---

Complaint. While highlighting the addition of a Table of Contents and mischaracterizing changes to sections of the pleading, the table fails to acknowledge the fundamental restructuring of the pleading that specifically ties each element of the Section 10(b) claim to the facts needed to plead it adequately in accordance with Rule 9(b) and the PSLRA as mandated by the Court's Order. The Table also notes that the Complaint does not contain the previously pleaded subject matter jurisdiction language. While the Auditor actually acknowledges this is probably a mere oversight (Plaintiff proffers that it was indeed a word processing error that could be readily cured), no defendant actually contends that subject matter jurisdiction is not present here. Nevertheless, Plaintiff apologizes for the error.

[6] EKSH also argues that Plaintiff has failed to allege loss causation when the Complaint makes clear that in reaction to the revelations of the fraud through a series of partial disclosures during the Class Period, the price of Whitney shares plummeted 55%. This is more than sufficient to meet the applicable notice pleading requirements of Rule 8. *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005). The causation argument is addressed in detail in the Co. Opp. and is incorporated by reference herein and, for the sake of efficiency, not repeated here.

544 U.S. 336 (2005).

Further, in regard to scienter, allegations of a 10(b) claim will survive a motion to dismiss "if a reasonable person would deem the inference cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 127 S. Ct. at 2510. Thus, if the inferences properly drawn from the facts are in "equipoise," (*id*. at 2514), the scienter allegations will survive a 12(b)(6) motion.

## II. THE COMPLAINT ALLEGES MATERIALLY FALSE AND MISLEADING STATEMENTS AND/OR OMISSIONS BY THE AUDITOR

Notwithstanding EKSH's contrary mischaracterizations, the Complaint alleges – in accordance with the particularity required by the PSLRA and Rule 9(b) – that EKSH made false and misleading statements during the Class Period in violation of Section 10(b) and Rule 10b-5. Federal Rule of Civil Procedure 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *see also Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1371 (11th Cir. 1997) (noting that Rule 9(b) may be satisfied by a "list containing allegations of fraud describing nature and subject of statements found to be sufficient, even where precise words used were not alleged") (citation omitted).

The pleading requirements of Rule 9(b) are met where, as here, the complaint: identifies the alleged material misstatements made by the Auditor, which where included in the Company's filings with the Auditor's permission; and sets forth why the auditor's statements are allegedly false and misleading. *See, e.g., In re Sunterra Corp. Sec. Litig*., 199 F. Supp. 2d 1308, 1331-32 (M.D. Fla. 2002).

Plaintiff has complied with Rule 9(b) because the Complaint states in which documents EKSH made false and misleading statements, the nature of those statements, the date the

documents were filed or published, where those documents were filed or published, and how EKSH's statements contained therein were misleading. *See, e.g.*, *Garfield v. NDC HealthCorp*, 466 F.3d 1255, 1262 (11th Cir. 2006). For example, the Complaint alleges that EKSH:

- signed an Independent Auditors Report certifying the veracity and completeness of the Company's SEC filings made during the Class Period, ¶ 13;

- provided letters of consent and/or made representations regarding the accuracy and completeness of filings made by the Company with the SEC, including but not limited to Whitney's materially false and misleading Registration Statement filed with, but not approved by, the SEC in connection with the attempted sale and offering of over $33 million in *EduTrades* public offering stock, ¶ 14;

- provided reports for the Company's 2005 Form 10-K and January 11, 2006 Form S-1 which stated EKSH's opinion that "the consolidated financial statements . . . present fairly, in all material respects, the financial position of Whitney Information Network, Inc. and Subsidiaries" in conformity with GAAP, ¶ 82.

With regard to the materially false and misleading nature of EKSH's statements and omissions, the mere existence of a restatement is sufficient to show that EKSH's made materially false statements in the Company's financial statements. "Pursuant to Generally Accepted Accounting Principles ("GAAP"), previously issued financial statements should be restated only to correct material accounting errors that existed at the time the statements were originally issued." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004). The fact that financial results were restated at all is sufficient to establish falsity at this stage. *Id. at 486-87 (citing In re Cylink Sec. Litig.,* 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001); *See also In re Bio-Technology Gen. Corp. Sec. Litig.,* 380 F. Supp. 2d 574, 586 (D.N.J. 2005) ("Plaintiff has adequately alleged a restatement of the 1999 sale and 2001 repurchase, a fact which in itself establishes the falsity of the original statements for purposes of surviving a motion to dismiss."); *In re FirstEnergy Corp. Sec. Litig.,* 316 F. Supp. 2d 581, 595 (N.D. Ohio 2004) (citing case where the court assumed that the need for a restatement demonstrated the

falsity of the prior statement even if it did not, alone, plead the requisite scienter. "Such an assumption is logical since the purpose of a restatement is to correct an error in a previously-issued financial statement. By definition then, a restatement says that the prior financial statement was false.")

In the Company's 2005 Form 10-K, which was subsequently restated, EKSH made materially false and/or misleading statements that it had audited Whitney's consolidated financial statements and that those statements fairly represented the financial position of the Company as of the year end of 2005 and 2004. Complaint, ¶82. EKSH also stated in the 10-K that Whitney's results of operations and cash flows for the three years ending December 31, 2005 were in conformity with GAAP. *Id.* Each of these statements was materially false and misleading, as evidenced by the fact that every financial statement referred to and audited by EKSH had to be restated, including the 2005 Form 10-K, which was issued during the Class Period. *See, e.g.* Complaint, ¶¶88-92.

EKSH heavily relies upon *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194 (11th Cir. 2001), to support its position that the Auditor should not be held liable for its materially false and misleading statements and omissions here. Unfortunately for EKSH, this case could not be more inapplicable on the core issue, which is why EKSH disingenuously ignores the crucial facts, including that the auditor in Ziemba did not even hold itself out to the public as the company's auditor and *never made a single statement about the financial condition of the company*. As noted by the Eleventh Circuit:

> In dismissing Plaintiffs' § 10(b) primary liability claims against C&L, the district court concluded that, because Plaintiffs did not allege that C&L's audit reports of Fran's Fashions or Conston contained material misrepresentations or omissions, nor did Plaintiffs allege that C&L made assurances to the public about the accuracy of Cascade's financial statements, the only alleged activity of C&L that might possibly give rise to primary liability was C&L's failure to disclose that

8

> Cascade's 1991 10-K was misleading. However, the district court concluded that C&L had no duty to disclose the Cascade fraud, because "**C&L did not hold itself out as Cascade's auditor and never made a public statement about the financial condition of Cascade**."

*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1203 (11th Cir. 2001) (quoting *In re Cascade Int'l Sec. Litig.*, 894 F. Supp. 437, 443 (S.D. Fla. 1995) (emphasis added). What's more, the allegations against the auditors in the *Ziemba* are distinguishable in degree and kind from those of the Complaint levied against ESKH. As noted by the Eleventh Circuit:

> Plaintiffs' allegations concerning C&L fall into three categories: (1) misadvising Cascade that its financial results did not need to be consolidated with those of Conston; (2) failing to include "going concern" qualifications in its audit reports of Conston and Fran's Fashions; and (3) failing to disclose the fraud allegedly suggested by Cascade's 1991 10-K.

*Id.*

Unlike the *Ziemba* complaint, the Complaint alleges that EKSH itself made materially false and misleading statements in the Company's pubic disclosures. Complaint, ¶ 82 (noting that EKSH made false public disclosures regarding the Company's financial position and compliance with GAAP in the Company's 2005 Form 10-K and January 2006 S-1). As such, this case is clearly distinguishable from *Ziemba* in which the auditor "**never made a public statement about the financial condition of Cascade**." *Id.* (emphasis added). Moreover, the substantial and detailed fraud alleged against ESKH goes well beyond the failure of an auditor to disclose that Company's 10-K "was *misleading*," which the *Ziemba* district court found to be "the only alleged activity of C&L that might possibly give rise to primary liability." *In re Cascade Int'l Sec. Litig.*, 894 F. Supp. at 443 (emphasis added).

Accordingly, Plaintiff has complied with the mandates of Rule 9(b) and the PSLRA in pleading with particularity the material falsity of the statements and omissions made by ESKH.

9

Similarly, with regard to scienter, the adequacy of Plaintiff's allegations is addressed in Section III below.

## III. PLAINTIFFS HAVE ADEQUATELY PLEADED THE AUDITOR'S SCIENTER

The Complaint adequately pleads that EKSH's false and misleading statements during the Class Period were made with scienter. As previously noted, to establish a 10(b) violation in the Eleventh Circuit, the complaint when taken as a whole, as required by *Tellabs*, need only give rise to a strong inference that the defendant acted in a "severely reckless" manner. *Garfield*, 466 F.3d 1264 (citations omitted). Extreme departures from the standards of ordinary care, such as those identified by the Amended Complaint, "present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *See id.* (citations omitted).

Moreover, while EKSH attempts to minimize the affect of the presence of pervasive GAAP and SEC violations on its state of mind, the weight of authority suggests that such pervasive violations constitute reliable indicia of scienter.[7] As noted by the Eleventh Circuit, "red flags, combined with alleged violations of GAAS or GAAP may be enough to establish the requisite level scienter." *Garfield*, 466 F.3d at 1267-68 (citations omitted).[8]

Because Plaintiff alleges a myriad of red flags sufficient to alert EKSH to Company and Individual Defendants' fraud, coupled with persistent and pervasive violations of GAAP, the Complaint met this Circuit's requirements for pleading scienter under the PSLRA. As an initial

---

[7] *See Takara Trust v. Molex Inc.*, 429 F. Supp. 2d 960, 980 (N.D. Ill. 2006) (indicating that GAAP violation may support inference of scienter); *Lewin v. Lipper Convertibles, L.P.*, No. 03 CV 1117RO, 2004 WL 1077930, at *2 (S.D.N.Y., May 13, 2004) (holding that accounting violations on repeated and pervasive scale could provide evidence of recklessness on part of PricewaterhouseCoopers); *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 651 (E.D. Va. 2000); *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 21 (D.D.C. 2000); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 217 (S.D.N.Y. 1999); *Carley Capital Group v. Deloitte & Touche, LLP*, 27 F. Supp. 2d 1324, 1339 (N.D. Ga. 1998).

[8] As noted by the *Garfield* court, red flags are "those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *Garfield*, 466 F.3d at 1264 (quoting *Sunterra*, 199 F. Supp. 2d at 1334).

10

matter, EKSH only became Whitney's auditor in February 2001 following a six month period during which the Company juggled accounting firms and faced massive financial restatements. Immediately preceding ESKH's retention, the Company disclosed in its August 2, 2000 8-K that it would be terminating its long-time auditor, Larry Legel, CPA, in order to retain a "larger firm," BDO Seidman. *See* Miller Decl. Exh. A. However, only months later, the Company announced in its November 21, 2008 8-K that it would be terminating BDO Seidman. Miller Decl. Exh. B.

Immediately preceding EKSH's hiring, the Company announced on December 5, 2000 that it would be forced to restate its quarterly and year end financial statements for 1998 and 1999, and its 2000 quarterly statements through September 30, 2000. *See* Miller Decl, Exh. C. This restatement, which resulted in cumulative losses of approximately $ 12,000,000, was needed, in part, to reflect as period costs "expenses giving rise to deferred revenues that were previously capitalized." *Id.* What's more, despite the presence of these glaring red flags, EKSH now claims that it had no reason to suspect or be aware of the accounting violations in the financial statements it audited – even those errors related to the accounting for deferred revenues. These events immediately preceding the hiring of EKSH, and the pervasive and persistent GAAP violations identified by the Complaint, were sufficient to "place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *Garfield*, 466 F.3d at 1264 (quoting *Sunterra*, 199 F. Supp. 2d at 1334).

Notwithstanding the preceding, the Complaint alleges, *inter alia*, the following additional red flags that, together with the numerous GAAP violations, constitute further strong indicia of EKSH's scienter:

- **Material Weakness and Lack of Internal Controls**—By early 2005, EKSH

11

acknowledged that it was aware of material weakness relating to insufficient human resources dedicated to accounting and financial reporting. ¶ 78.[9] Again, the Company's 1Q:06 Form 10-Q acknowledged that it had "several material weaknesses" in its "internal control over financial reporting." Complaint, ¶ 84. The Company's "personnel lacked sufficient knowledge and experience and did not have appropriate oversight, its "accounting department [] experienced significant turnover at various levels," and its "disclosure controls and procedures were not effective." ¶ 83. EKSH was Whitney's accountant and auditor for over *five years* before these revelations were made to the public.

- **Extraordinary Amounts of Refunds and Chargebacks**—For the first half of 2004, Whitney's Regulatory Compliance Department issued $11 million in refunds and incurred $1 million in customer chargebacks. ¶ 50. Such massive quantities of returns indicate clear customer dissatisfaction with the Company, resulting in huge changes to income. Further, the meteoric rise in the number of chargebacks as compared to preceding years, as well as the fact that the Company was required to increase its Merchant Reserves by millions of dollars, should have been an indication to EKSH, or any reasonable auditor, that the Company was not adequately processing or allowing returns, evidencing both the problems with the Company's business model and the unpredictability of its revenue.

- **Suspiciously-Timed Departures**—The suspicious departures of at least six Company executives (including the Audit Committee Chair) in the wake of shocking announcements: disclosing, among other things, that the Company received a Grand Jury Subpoena from the United States Attorney notifying the Company that it was being

---

[9] All ¶__ references are to the Complaint.

investigated; a *New York Times* exposé on the Company; and a Grand Jury investigation revealed that the trading records of the Company's Director of Corporate Communication, Richard O'Dor, did not substantiate claims he made in the press. ¶¶ 142, 148, 160-164.

- **Improper Recording of Deferred Income**—Whitney manipulated the Company's reported "Deferred Income" by deferring recording revenue on "camps" and "mentoring" but failing to defer revenue for "coaching services." ¶¶ 27, 57, 69, 73-75, 124.

- **The Company's Zero Refund Return Policy and Chargeback Schemes**—Whitney had a zero-refund policy designed to obfuscate and thwart customer refund and chargeback requests. ¶¶ 23, 120. The Company's Merchant Account Transaction Analysis reports revealed "out of control" chargeback rates as a result of the Company's zero-refund policy. ¶¶ 119-120. Merchant banks were facing significant exposure as a result of their relationship with Whitney, putting the Company's merchant accounts at risk and resulting in a number of terminated merchant accounts. ¶¶ 119-120.

In addition to these glaring red flags, the Complaint enumerates extensive and substantial violations of specific GAAP provisions, SEC rules and regulations, and fair financial reporting principles. ¶¶ 111-114. Though EKSH attempts to maintain that the Complaint does not allege "a single violation of the standards that apply to auditors," in reality, it is for these violations, which EKSH either concealed or was severely reckless in failing to discover after *five years* as the Company's auditor, that the Company was forced to restate five years of its financials—from 2001 through and including 2005. ¶ 89. Importantly, this extensive restatement spanned the entire period for which EKSH served as the Company's Auditor. As noted above, allegations of GAAP violations "when combined with a drastic overstatement of financial results can give rise

13

to a strong inference of scienter." *Sunterra*, 199 F. Supp. 2d at 1335 (quoting *Carley Capital*, 27 F. Supp. 2d at 1339).

Where Plaintiff has alleged the Company was a complete sham—starting with Russ Whitney's fabricated background and experience and concealing his status as a convicted felon, through the bogus products forced on unwitting consumers, to the zero refund policy, GAAP violations, manipulations of revenue recognition requiring restatements, and suspiciously-timed departures of no fewer than six Company executives (including the Audit Committee Chair) after announcements including that the Company had received a Grand Jury Subpoena from the United States Attorney notifying the Company that it was being investigated—Plaintiff's scienter allegations as to EKSH—are cogent and at least as compelling as any opposing inference.

Contrary to the characterizations of ESKH, *In re Recoton Corp. Sec. Litig.* does not stand for the proposition that in order to met the Eleventh Circuit's standard of "severely reckless" for pleading scienter Plaintiff must plead that ESKH, or one of its employees, had specific knowledge of fraud perpetrated by the Company or the Individual Defendants. *See* EKSH Br. at 9. EKSH's attempts to misinterpret *In re Recoton Corp. Sec. Litig.*, 358 F. Supp. 2d 1130, to create a heightened "knowledge only" standard for pleading scienter for auditor defendants under the PSLRA fails.  Such a reading is unsupported by the decision itself and flies in the face of controlling Eleventh Circuit precedent as well as the PSLRA. Plaintiff must merely "plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1264 (11th Cir. 2006).

Moreover, legal scholars have roundly rejected attempts to read into the PSLRA's recklessness requirement for scienter an actual knowledge or intent standard for pleading auditor scienter as one lacking any legitimate precedential support and contrary to express language of

14

the PSLRA. *See* Gideon Mark, Accounting Fraud: Pleading Scienter of Auditors Under the PSLRA, 39 Conn. L. Rev. 1097, 1099 (Feb. 2007) ("The adoption of an elevated standard for pleading scienter of auditors is unjustified. The express language of the PSLRA does not provide for such a standard, and no compelling policy justification has been advanced by those courts that have, in effect, rewritten the statute. The widespread use of a standard that equates recklessness with intent is particularly suspect. Many courts adopting this standard cite Second Circuit precedent, but the relevant line of cases is weak. A careful parsing of the original source of the line discloses only weak support for the holding that is so often cited. Even the parallel standard-that the audit amounted to no audit at all-is unjustified. In the absence of sound policy reasons to the contrary, external auditors should be held to the same recklessness standard that other defendants are held to. That standard, as applied to auditors, should not require that plaintiffs allege and prove that, in effect, no audit was conducted. Such a requirement subverts the meaning of recklessness.")

As illustrated by the preceding discussion, the competing inference, that EKSH somehow was not severely reckless in failing to identify the alleged fraud after five years on the job as Auditor, after undertaking employment following a suspicious shuffling of accountants and drastic restatements and working under circumstances in which the Company faced massive return and chargeback amounts, improperly recorded income in a gross failure to comply with GAAP and identified material weaknesses and lack of internal controls, is simply not plausible. As the Complaint make clear, EKSH either purposefully concealed from the public or was severely reckless in disregarding these "red flags" when it made materially false and misleading public statements regarding the Company's financial condition.  As such, the inference that EKSH was severely reckless in making its materially false and misleading statements regarding

the financial condition of the Company and compliance with GAAP is, at a minimum, cogent and at least as compelling as any competing inference, as *Tellabs* requires. *See also Garfield*, 466 F.3d at 1267-68 (citations omitted).

## IV. THE AMENDED COMPLAINT ADEQUATELY PLEADS RELIANCE

In *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), the Supreme Court held that reliance for a Section 10(b) claim may be shown through the fraud on the market doctrine, whereby "reliance of individual plaintiffs on the integrity of the market price may be presumed" when defendants' misrepresentations or omissions have been "disseminated into an impersonal, well-developed market for securities." *Id*. at 247. *See also Stoneridge*, 128 S. Ct. 761 (under the fraud on the market doctrine, "reliance is presumed when the statements at issue become public"); *Lipton v. Documation, Inc.*, 734 F.2d 740, 747-48 (11th Cir. 1984) ("[R]eliance may be presumed where securities are traded on the open market, subject to the defendant proving that the misrepresentations were not material or that the plaintiff's decision to purchase was or would have been unaffected if he had known the true facts."). The Complaint adequately pleads reliance in accordance with these governing principles. *See* Complaint at Section VIII, ¶¶155-158 (alleging that the market for Whitney's common stock was efficient and promptly digested current information from all publicly available sources and that all class members suffered similar injury through their purchase of Whitney common stock at artificially inflated prices and a presumption of reliance applies).

The Auditor once again reveals a fundamental misunderstanding of basic principles of reliance in a securities class action, including the applicability of the fraud on the market doctrine, and appears to believe that individual reliance by Plaintiff must be shown. *See*, *e.g.*, Br. at 8 ("the [Complaint] also fails to allege that Plaintiffs were misled by EKS&H's actions. No reliance on EKS&H's actions is alleged whatsoever. If Plaintiff's allegations here were

16

sufficient to satisfy the fourth requirement [providing that plaintiff alleges what the defendants obtained as a consequence of the fraud] then plaintiffs in every case would satisfy the fourth requirement by merely alleging that the auditors didn't perform their audit for free."). As noted above, the Supreme Court has clearly held otherwise.

## V. THE AMENDED COMPLAINT COMPLIES WITH THE COURT'S ORDER

Notwithstanding EKSH's sporadic representations to the contrary, the Complaint adequately lays out the nexus between the acts of EKSH and the elements of the fraud alleged: the Complaint alleges that the Auditor made material misstatements and/or omissions of material fact; with scienter (knowledge or extreme recklessness that the statements or omissions were false when made); upon which Plaintiff relied; causing damages to Plaintiff.  ¶¶12-16, 82, 87. 140-158.

To provide an example, with regard to the Auditor's making of materially false and misleading statements and/or omissions during the Class Period, the Complaint alleges that in the Company's 2005 Form 10-K and January 2006 S-1, EKSH falsely disclosed that "'the consolidated financial statements . . . present fairly, in all material respects, the financial position of Whitney Information Network, Inc. and Subsidiaries' in conformity with GAAP[.]" Complaint, ¶ 82.  In addition, the Complaint alleges *why* EKSH's statement was false, *i.e.*, because the Company's "financial statements did not comply with GAAP and SEC rules because, *inter alia*, revenue was improperly and prematurely recognized, and that rather than providing full, fair, and accurate disclosures," Defendants concealed the true condition of the Company.  Complaint, ¶ 87.  Further, the Complaint alleges that EKSH made such "representations regarding the accuracy and the completeness of filings made by the Company with the SEC" and that by virtue of this role EKSH "had access to the adverse undisclosed

17

information about Whitney's business prospects and financial condition and performance." ¶¶13-16... Moreover, the Complaint charges that the economic loss suffered by Plaintiff and the Class was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Whitney's stock and the subsequent significant decline in the value of the Company's shares when Defendants' prior misstatements was revealed. Complaint, ¶¶ 144-154. Finally, the Complaint adequately alleges reliance. ¶¶155-158.

In the face of such specific allegations, EKSH cannot hide behind its mischaracterization of the Complaint and maintain that "[t]hey have not specified which alleged misrepresentations or omission are attributed to EKS&H, and how those alleged misrepresentations or omissions are causally connected to Plaintiff's alleged damages." (Dkt. 103, pg. 7).

Moreover, while EKSH asserts that dismissal of the Complaint is proper under *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1237 (11th Cir. 2006), EKSH's fails to even muster an argument relevant to the holding in that case.[10] In accordance with this Court's Order and the requirements of *Wagner*, the Complaint clearly links its pointed allegations to the only cause of action alleged against EKSH. Thus, the Complaint sufficiently links the specific allegations against EKSH to the claims asserted, and EKSH has failed to carry its burden in demonstrating that, after accepting all well pleaded allegations of the Complaint as true, there exists no possibility for relief. Accordingly, this Court should deny EKSH's Motion.

---

[10] In fact, in addressing *Wagner* in its prior motion to dismiss brief, EKSH block quoted several lines of discussion regarding the Court's assessment that the paragraphs were not connected to the otherwise generally pled claims in any meaningful way" and omitted the crucial language that the "**concern we address today is structural and does not express an opinion on the merits of the claim**." *Wagner*, 464 at 1279. Prior Br. at 10. In light of such misleading tactics, it is difficult to take EKSH's other legal arguments at face value.

## CONCLUSION

For the foregoing reasons, EKSH's motion to dismiss should be denied.[11]

Respectfully submitted,

　　　/s/ Kim E. Miller_____
Kim E. Miller (admitted *pro hac vice*)
**KAHN GAUTHIER SWICK, LLC**
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

Lewis S. Kahn (admitted *pro hac vice*)
**KAHN GAUTHIER SWICK, LLC**
650 Poydras St., Ste 2150
New Orleans, LA 70130
Telephone: (504) 455-1498
Facsimile: (504)455-1498

*Lead Counsel for the Class*

-and-

Maya Saxena
Joseph E. White III
**SAXENA WHITE PA**
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3382

*Liaison Counsel for the Class*

---

[11] In the event that this Court determines that any portion of this Complaint should be dismissed, Plaintiff respectfully requests leave to replead pursuant to Fed. R. Civ. P. 15(a). EKSH's request that the Court not grant leave to amend fails to cite a single case and falsely claims that Plaintiff has had "several years to develop" their case. EKSH Br. at 25. In truth, Lead Plaintiff was appointed on April 25, 2007, and no motion to dismiss has been granted. "The Eleventh Circuit requires leave to amend be granted where a more carefully drafted complaint might state a claim." *Garfield*, 466 F.3d at 1271.

19