UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

ARNOLD FRIEDMAN, individually and
on behalf of all others similarly situated,          )
                                                      )
                                                      )
            Plaintiffs,                               )
                                                      )          Case No. 2:06-cv-00687 FtM-34-DNF
v.                                                    )
                                                      )
WHITNEY INFORMATION NETWORK INC.,                     )
RUSSELL A WHITNEY,                                    )
RONALD S. SIMON,                                      )
ALFRED R. NOVAS,                                      )
JOHN F. KANE,                                         )
NICHOLAS S. MATURO,                                   )
RANCE MASHECK, and                                    )
EHRHARDT KEEFE STEINER &                              )
HOTTMAN PC                                            )
                                                      )
            Defendants.                               )
                                                      )
_____              )

**PRINCIPAL AUTHORITY RELIED ON IN DEFENDANT EHRHARDT KEEFE STEINER
& HOTTMAN PC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS [SECOND] CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Defendant Ehrhardt Keefe Steiner & Hottman PC ("EKS&H"), by its undersigned

counsel and in compliance with the Court's request during the telephone conference of

April 16, 2009, hereby submits its principal case law in support of its Motion to Dismiss.

LAW OFFICES OF

**SLK**

STEPHENS LYNN KLEIN
LA CAVA & PUYA, P.A.

| Tab | Case Name | Citation | Proposition | Page (in Motion to Dismiss) |
|-----|-----------|----------|-------------|------------------------------|
| 1. | *Ziemba v. Cascade International, Inc.* | 256 F.3d 1194 (11th Cir. 2001) | To plead fraud with particularity as to EKS&H, plaintiff must specify exactly what statements EKS&H made, and why they were false.<br><br>Pinpoint cite: 256 F.3d at 1202<br><br>Plaintiffs have not specified which "red flags" EKS&H was actually aware of, and have likewise specified no facts suggesting that EKS&H was severely reckless.<br><br>Pinpoint cite: 256 F.3d at 1210 | 7-9 |
| 2. | *In re Recoton Corp. Sec. Litig.* | 358 F.Supp.2d 1130 (M.D. Fla. 2005) | Plaintiffs do not plead scienter as to EKS&H with sufficient particularity. Conclusory allegations that do no more than state that EKS&H "would have known," "knew and ignored," or "recklessly failed to know" are insufficient to state a claim under PSLRA and Rule 9(b).<br><br>Pinpoint cite: 358 F.Supp.2d 1147 | 9 |
| 3. | *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* | 551 U.S. 308, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179 | Plaintiff's second amended complaint contains no facts to support a cogent and compelling inference, at least | 10-11 |

| | | (2007) | as compelling as the opposing inference, that EKS&H acted with severe recklessness.

Pinpoint cite: 127 S.Ct. at 2504-05 | |
| 4. | *Garfield v. NDC Health Corp.* | 466 F.3d 1255 (11th Cir. 2006) | General allegations that auditors ignored red flags, or conclusory statements that the auditors violated GAAP or GAAS do not rise to the specificity level required by the PSLRA.

Pinpoint cite: 466 F.3d. at 1267-70 | 13 |
| 5. | *Public Employees' Retirement Association of Colorado v. Deloitte & Touche, LLP* | 551 F.3d 305 (4th Cir. 2009). | In order to survive a motion to dismiss, the allegations in the complaint against EKS&H, viewed in their totality and in light of all the evidence in the record, must allow the Court to draw a strong inference at least as compelling as any opposing inference, that EKS&H, was reckless in issuing false audit opinions.

Pinpoint cite: 551 F.3d at 313 | 13-14 |
| 6. | In re CP Ships Ltd. Sec. Litig. | 506 F Supp.2d 1161 (M.D. Fla. | Mere publication of restated financial statements is | 14 |

| | | 2007) | insufficient to create the strong inference of scienter required by the PSLRA.<br><br>Pinpoint cite:  506 F. Supp. 2d at 1168 | |
|---|---|---|---|---|
| 7. | *Dura Pharmaceuticals Inc. v. Broudo* | 544 U.S. 336, 3451-341 (2005) | A key element to a claim under §10(b) or Rule 10b-5 is loss causation—that is, the fraudulent statement or omission must actually cause the loss complained of.  The alleged fraudulent statements and omissions in the instant case did not cause the drop in the stock prices complained of in the second amended complaint.<br><br>Pinpoint cite:  544 U.S. at 346-348 | 22-25 |

Wherefore, Defendant EKS&H respectfully requests that the [Second] Consolidated Amended Complaint against EKS&H be dismissed *with prejudice.*

Dated this 8th day of May, 2009.

Respectfully submitted,

STEPHENS LYNN KLEIN
LACAVA HOFFMAN & PUYA, P.A.

_s/_____
Robert M. Klein
Fla. Bar No.: 230022
Sherryll Martens Dunaj
Fla. Bar No.: 136707
Two Datran Center, Penthouse II

9130 S. Dadeland Blvd.
Miami, FL 33156
Phone: (303) 670-3700
Fax: 303-670-8592
kleinr@stephenslynn.com
dunajs@stephenslynn.com

ATTORNEYS FOR DEFENDANT
EHRHARDT KEEFE STEINER &
HOTTMAN PC

## CERTIFICATE OF SERVICE

I hereby certify that on May 8th , 2009, the foregoing **PRINCIPAL AUTHORITY RELIED ON IN DEFENDANT EHRHARDT KEEFE STEINER & HOTTMAN PC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS [SECOND] CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** was filed with the clerk of the court and served on the following by using the CM/ECF system:

Michael A. Swick, Esq.
Kim E. Miller, Esq.
Kahn Gauthier Swick, LLC
114 East 39th Street
New York, NY 10016
kim.miller@kgscounsel.com

Maya Saxena, Esq.
Joseph E. White, III, Esq.
Saxena White P.A.
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
msaxena@saxenawhite.com
jwhite@saxenawhite.com

Brian P. Miller, Esq.
Samantha J. Kavanaugh, Esq.
Akerman Senterfitt
One Southeast Third Avenue, 25th Floor
Miami, FL 33131
brian.miller@akerman.com
samantha.kavanaugh@akerman.com

Tracy A. Nichols, Esq.
Mara D. Aronson, Esq.
Holland & Knight, LLP
701 Brickell Avenue, Suite 3000
P.O. Box 015441
Miami, FL 33131-5441
tracy.nichols@hklaw.com
mara.aronson@hklaw.com

Morris Weinberg, Jr., Esq.
Nathan M. Berman, Esq.
Zuckerman Spaeder LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, FL 33602
sweinberg@zuckerman.com
nberman@zuckerman.com

John C. Dotterer, Esq.
John C. Dotterer Counsellors at Law, P.A.
125 Worth Avenue, Suite 310
Palm Beach, FL 33480
dottj@dottlaw.com

Richard Brualdi, Esq.
The Brualdi Law Firm
29 Broadway, Suite 1515
New York, NY 10006
rbrualdi@brualdilawfirm.com

I further certify that the foregoing document and the notice of electronic filing were served on the following non-CM/ECF participants by first class U.S. mail:

Lewis S. Kahn, Esq.
Kahn Gauthier Swick, LLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130\

David Krakoff, Esq.
Alex Lakatos, Esq.
Mayer Brown LLP
1909 K Street, NW

Case No. 2:06-cv-00687 FtM-34-DNF
Page 7

Washington, D.C.  20006

James Doty, Esq.
Mary Spearing, Esq.
Baker Botts LLP
1299 Pennsylvania Ave., NW
Washington, D.C.  20004

s/ _____
Sherryll Martens Dunaj



544 U.S. 336, 125 S.Ct. 1627, Blue Sky L. Rep. P 74,529, 161 L.Ed.2d 577, 73 USLW 4283, Fed. Sec. L. Rep. P
93,218, 05 Cal. Daily Op. Serv. 3273, 2005 Daily Journal D.A.R. 4419, 18 Fla. L. Weekly Fed. S 233
**(Cite as: 544 U.S. 336, 125 S.Ct. 1627)**

▷Dura Pharmaceuticals, Inc. v. Broudo
U.S.,2005.

Supreme Court of the United States
DURA PHARMACEUTICALS, INC., et al.,
Petitioners,
v.
Michael BROUDO et al.
**No. 03-932.**

Argued Jan. 12, 2005.
Decided April 19, 2005.

**Background:** Purchasers of stock in
pharmaceutical company brought securities fraud
action against company and certain managers and
directors, alleging that defendants' false statements
regarding expected future Food and Drug
Administration (FDA) approval of a new asthmatic
spray device artificially inflated price of stock. The
United States District Court for the Southern District
of California, 2000 WL 33176043,M. James Lorenz,
J., dismissed without prejudice, and following filing
of amended complaint dismissed with prejudice.
Purchaser appealed. The Court of Appeals, 339 F.3d
933, reversed and remanded. Certiorari was granted.

**Holdings:** The Supreme Court, Justice Breyer,
held that:

(1) an investor may not establish loss causation
by alleging that security price was inflated because of
misrepresentation, and

(2) investors' allegations were insufficient to
state fraud claim.

Reversed and remanded.

West Headnotes

**[1] Securities Regulation 349B** 🔑60.47

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation

349Bk60.43 Grounds of and Defenses
to Liability
        349Bk60.47 k. Causation; Existence
of Injury. Most Cited Cases
An investor claiming securities fraud under the
Securities Exchange Act cannot satisfy the
requirement of proving that the fraud caused an
economic loss simply by alleging in the complaint,
and subsequently establishing, that the price of the
security on the date of purchase was inflated because
of the misrepresentation. Securities Exchange Act of
1934, § 21D(b)(4), as amended, 15 U.S.C.A. § 78u-
4(b)(4).

**[2] Securities Regulation 349B** 🔑60.53

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.53 k. Misrepresentation.
Most Cited Cases
Investors' allegations that they paid artificially
inflated prices for securities of pharmaceutical
company, due to false statements regarding expected
future Food and Drug Administration (FDA)
approval of a new asthmatic spray device, and
suffered damages, implying that the investors' loss
consisted of the artificially inflated purchase price,
were insufficient to state securities fraud claim under
Securities Exchange Act; investors failed to claim
that share price fell significantly after truth became
known. Securities Exchange Act of 1934, §
21D(b)(4), as amended, 15 U.S.C.A. § 78u-4(b)(4).

**\*336\*\*1628 Syllabus** FN\*

FN\* The syllabus constitutes no part of the
opinion of the Court but has been prepared
by the Reporter of Decisions for the
convenience of the reader. See United States
v. Detroit Timber & Lumber Co., 200 U.S.
321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Respondents filed a securities fraud class action,
alleging that petitioners, Dura Pharmaceuticals, Inc.,
and some of its managers and directors (hereinafter
Dura), made, *inter alia,* misrepresentations about

125 S.Ct. 1627
Page 2
544 U.S. 336, 125 S.Ct. 1627, Blue Sky L. Rep. P 74,529, 161 L.Ed.2d 577, 73 USLW 4283, Fed. Sec. L. Rep. P 93,218, 05 Cal. Daily Op. Serv. 3273, 2005 Daily Journal D.A.R. 4419, 18 Fla. L. Weekly Fed. S 233
(Cite as: 544 U.S. 336, 125 S.Ct. 1627)

future Food and Drug Administration approval of a new asthmatic spray device, leading respondents to purchase Dura securities at an artificially inflated price. In dismissing, the District Court found that the complaint failed adequately to allege "loss causation"-*i.e.*, a causal connection between the spray device misrepresentation and the economic loss, 15 U.S.C. § 78u-4(b)(4). The Ninth Circuit reversed, finding that a plaintiff can satisfy the loss causation requirement simply by alleging that a security's price at the time of purchase was inflated because of the misrepresentation.

*Held:*

1. An inflated purchase price will not by itself constitute or proximately cause the relevant economic loss needed to allege and prove "loss causation." The basic elements of a private securities fraud action-which resembles a common-law tort action for deceit and misrepresentation-include, as relevant here, economic loss and "loss causation." The Ninth Circuit erred in following an inflated purchase price approach to showing causation and loss. First, as a matter of pure logic, the moment the transaction takes place, the plaintiff has suffered no loss because the inflated purchase price is offset by ownership of a share that possesses equivalent value at that instant. And the logical link between the inflated purchase price and any later economic loss is not invariably strong, since other factors may affect the price. Thus, the most logic alone permits this Court to say is that the inflated purchase price suggests that misrepresentation "touches upon" a later economic loss, as the Ninth Circuit found. However, to touch upon a loss is not to *cause* a loss, as 15 U.S.C. § 78u-4(b)(4) requires. The Ninth Circuit's holding also is not supported by precedent. The common-law deceit and misrepresentation actions that private securities fraud actions resemble require a plaintiff to show not only that had he known the truth he would not have acted, but also that he suffered actual economic loss. Nor can the holding below be reconciled with the views of other Courts *337 of Appeals, which have rejected the inflated purchase price approach to showing loss causation. Finally, the Ninth Circuit's approach is inconsistent with an important securities law objective. The securities laws make clear Congress' intent to permit private securities fraud actions only where plaintiffs adequately allege and prove the **1629 traditional elements of cause and loss, but the Ninth Circuit's approach would allow recovery where a

misrepresentation leads to an inflated purchase price, but does not proximately cause any economic loss. Pp. 1630-1634.

2. Respondents' complaint was legally insufficient in respect to its allegation of "loss causation." While Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," and while the Court assumes that neither the Rules nor the securities statutes place any further requirement in respect to the pleading, the "short and plain statement" must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests,"*Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80. The complaint here contains only respondents' allegation that their loss consisted of artificially inflated purchase prices. However, as this Court has concluded here, such a price is not itself a relevant economic loss. And the complaint nowhere else provides Dura with notice of what the relevant loss might be or of what the causal connection might be between that loss and the misrepresentation. Ordinary pleading rules are not meant to impose a great burden on a plaintiff, but it should not prove burdensome for a plaintiff suffering economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind. Allowing a plaintiff to forgo giving any indication of the economic loss and proximate cause would bring about the very sort of harm the securities statutes seek to avoid, namely, the abusive practice of filing lawsuits with only a faint hope that discovery might lead to some plausible cause of action. Pp. 1634-1635.

339 F.3d 933, reversed and remanded.

BREYER, J., delivered the opinion for a unanimous Court.

Thomas G. Hungar, for United States as amicus curiae, by special leave of the Court, supporting the petitioners.
Patrick J. Coughlin, On briefs, Sandford Svetcov, Eric Alan Isaacson, Joseph D. Daley, Alan Schulman, Myron Moskovitz, Daniel S. Sommers, and Paul R. Hoeber, for respondents.
William F. Sullivan, Counsel of Record, Christopher H. McGrath, Tracey L. DeLange, Paul, Hastings, Janofsky & Walker, LLP, San Diego, CA, Attorneys for Petitioners.For U.S. Supreme Court briefs, see:2004 WL 2075752 (Pet.Brief)2004 WL 2988614

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

125 S.Ct. 1627

Page 3

544 U.S. 336, 125 S.Ct. 1627, Blue Sky L. Rep. P 74,529, 161 L.Ed.2d 577, 73 USLW 4283, Fed. Sec. L. Rep. P 93,218, 05 Cal. Daily Op. Serv. 3273, 2005 Daily Journal D.A.R. 4419, 18 Fla. L. Weekly Fed. S 233
**(Cite as: 544 U.S. 336, 125 S.Ct. 1627)**

(Reply.Brief)

Justice BREYER delivered the opinion of the Court.

**\*338** A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss. 109 Stat. 747, 15 U.S.C. § 78u-4(b)(4). We consider a Ninth Circuit holding that a plaintiff can satisfy this requirement-a requirement that courts call "loss causation"-simply by alleging in the complaint and subsequently establishing that "the price" of the security *on the date of purchase was inflated because of the misrepresentation." 339 F.3d 933, 938 (9th Cir.2003) (internal quotation marks omitted). In our view, the Ninth Circuit is wrong, both in respect to what a plaintiff must prove and in respect to what the plaintiffs' complaint here must allege.

## \*339 I

Respondents are individuals who bought stock in Dura Pharmaceuticals, Inc., on the public securities market between April 15, 1997, and February 24, 1998. They have brought this securities fraud class action against Dura and some of its managers **\*1630** and directors (hereinafter Dura) in federal court. In respect to the question before us, their detailed amended (181 paragraph) complaint makes substantially the following allegations:

(1) Before and during the purchase period, Dura (or its officials) made false statements concerning both Dura's drug profits and future Food and Drug Administration (FDA) approval of a new asthmatic spray device. See, *e.g.,* App. 45a, 55a, 89a.

(2) In respect to drug profits, Dura falsely claimed that it expected that its drug sales would prove profitable. See, *e.g., id.,* at 66a-69a.

(3) In respect to the asthmatic spray device, Dura falsely claimed that it expected the FDA would soon grant its approval. See, *e.g., id.,* at 89a-90a, 103a-104a.

(4) On the last day of the purchase period, February 24, 1998, Dura announced that its earnings would be lower than expected, principally due to slow drug sales. *Id.,* at 51a.

(5) The next day Dura's shares lost almost half their value (falling from about \$39 per share to about \$21). *Ibid.*

(6) About eight months later (in November 1998), Dura announced that the FDA would not approve Dura's new asthmatic spray device. *Id.,* at 110a.

(7) The next day Dura's share price temporarily fell but almost fully recovered within one week. *Id.,*

at 156a.

Most importantly, the complaint says the following (and nothing significantly more than the following) about \*340 economic losses attributable to the spray device misstatement: *"In reliance on the integrity of the market, [the plaintiffs] ... paid artificially inflated prices for Dura securities" and the plaintiffs suffered "damage[s]" thereby. Id.,* at 139a (emphasis added).

The District Court dismissed the complaint. In respect to the plaintiffs' drug-profitability claim, it held that the complaint failed adequately to allege an appropriate state of mind, *i.e.,* that defendants had acted knowingly, or the like. In respect to the plaintiffs' spray device claim, it held that the complaint failed adequately to allege "loss causation."

The Court of Appeals for the Ninth Circuit reversed. In the portion of the court's decision now before us-the portion that concerns the spray device claim-the Circuit held that the complaint adequately alleged "loss causation." The Circuit wrote that "plaintiffs establish loss causation if they have shown that the price *on the date of purchase* was inflated because of the misrepresentation." 339 F.3d, at 938 (emphasis in original; internal quotation marks and citation omitted). It added that "the injury occurs at the time of the transaction." *Ibid.* Since the complaint pleaded "that the price at the time of purchase was overstated," and it sufficiently identified the cause, its allegations were legally sufficient. *Ibid.*

Because the Ninth Circuit's views about loss causation differ from those of other Circuits that have considered this issue, we granted Dura's petition for certiorari. Compare *ibid.* with, *e.g., Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 198 (C.A.2 2003); *Semerenko v. Cendant Corp.,* 223 F.3d 165, 185 (C.A.3 2000); *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1447-1448 (C.A.11 1997); cf. *Bastian v. Petren Resources Corp.,* 892 F.2d 680, 685 (C.A.7 1990). We now reverse.

## \*341 II

Private federal securities fraud actions are based upon federal securities statutes and their implementing regulations. Section 10(b) of the

125 S.Ct. 1627                                                                                          Page 4
544 U.S. 336, 125 S.Ct. 1627, Blue Sky L. Rep. P 74,529, 161 L.Ed.2d 577, 73 USLW 4283, Fed. Sec. L. Rep. P
93,218, 05 Cal. Daily Op. Serv. 3273, 2005 Daily Journal D.A.R. 4419, 18 Fla. L. Weekly Fed. S 233
**(Cite as: 544 U.S. 336, 125 S.Ct. 1627)**

Securities Exchange Act **1631 of 1934 forbids (1) the "use or employ[ment] ... of any ... deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" Securities and Exchange Commission "rules and regulations." 15 U.S.C. § 78j(b). Commission Rule 10b-5 forbids, among other things, the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made ... not misleading." 17 CFR § 240.10b-5 (2004).

The courts have implied from these statutes and Rule a private damages action, which resembles, but is not identical to, common-law tort actions for deceit and misrepresentation. See, e.g., *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730, 744, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). And Congress has imposed statutory requirements on that private action. *E.g.,*15 U.S.C. § 78u-4(b)(4).

In cases involving publicly traded securities and purchases or sales in public securities markets, the action's basic elements include:

(1) *a material misrepresentation (or omission),* see *Basic Inc. v. Levinson,* 485 U.S. 224, 231-232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988);

(2) *scienter, i.e.,* a wrongful state of mind, see *Ernst & Ernst, supra,* at 197, 199, 96 S.Ct. 1375;

(3) *a connection with the purchase or sale of a security,* see *Blue Chip Stamps, supra,* at 730-731, 95 S.Ct. 1917;

(4) *reliance,* often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation," see *Basic, supra,* at 248-249, 108 S.Ct. 978 (nonconclusively presuming that the price of a publicly *342 traded share reflects a material misrepresentation and that plaintiffs have relied upon that misrepresentation as long as they would not have bought the share in its absence);

(5) *economic loss,* 15 U.S.C. § 78u-4(b)(4); and

(6) *"loss causation," i.e.,* a causal connection between the material misrepresentation and the loss, *ibid.;* cf. T. Hazen, Law of Securities Regulation §§ 12.11[1], [3] (5th ed.2005).

Dura argues that the complaint's allegations are inadequate in respect to these last two elements.

A

[1] We begin with the Ninth Circuit's basic reason for finding the complaint adequate, namely, that at the end of the day plaintiffs need only "establish," *i.e.,* prove, that "the price *on the date of purchase* was inflated because of the misrepresentation." 339 F.3d, at 938 (internal quotation marks and citation omitted). In our view, this statement of the law is wrong. Normally, in cases such as this one (*i.e.,* fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic loss.

For one thing, as a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value. Moreover, the logical link between the inflated share purchase price and any later economic loss is not invariably strong. Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss. If the purchaser**1632 sells later after the truth makes its way into the marketplace, an initially inflated purchase price *might* mean a later loss. But that is far from inevitably so. When the *343 purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price. (The same is true in respect to a claim that a share's higher price is lower than it would otherwise have been-a claim we do not consider here.) Other things being equal, the longer the time between purchase and sale, the more likely that this is so, *i.e.,* the more likely that other factors caused the loss.

Given the tangle of factors affecting price, the most logic alone permits us to say is that the higher purchase price will *sometimes* play a role in bringing about a future loss. It may prove to be a necessary condition of any such loss, and in that sense one might say that the inflated purchase price suggests that the misrepresentation (using language the Ninth Circuit used) "touches upon" a later economic loss. *Ibid.* But, even if that is so, it is insufficient. To "touch upon" a loss is not to *cause* a loss, and it is the latter that the law requires. 15 U.S.C. § 78u-4(b)(4).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

125 S.Ct. 1627
Page 5
544 U.S. 336, 125 S.Ct. 1627, Blue Sky L. Rep. P 74,529, 161 L.Ed.2d 577, 73 USLW 4283, Fed. Sec. L. Rep. P
93,218, 05 Cal. Daily Op. Serv. 3273, 2005 Daily Journal D.A.R. 4419, 18 Fla. L. Weekly Fed. S 233
**(Cite as: 544 U.S. 336, 125 S.Ct. 1627)**

For another thing, the Ninth Circuit's holding lacks support in precedent. Judicially implied private securities fraud actions resemble in many (but not all) respects common-law deceit and misrepresentation actions. See *Blue Chip Stamps, supra,* at 744, 95 S.Ct. 1917; see also L. Loss & J. Seligman, Fundamentals of Securities Regulation 910-918 (5th ed.2004) (describing relationship to common-law deceit). The common law of deceit subjects a person who "fraudulently" makes a "misrepresentation" to liability "for pecuniary loss caused" to one who justifiably relies upon that misrepresentation. Restatement (Second) of Torts § 525, p. 55 (1976) (hereinafter Restatement of Torts); see also *Southern Development Co. v. Silva,* 125 U.S. 247, 250, 8 S.Ct. 881, 31 L.Ed. 678 (1888) (setting forth elements of fraudulent misrepresentation). And the common law has long insisted that a plaintiff in such a case show *344 not only that he known the truth he would not have acted but also that he suffered actual economic loss. See, *e.g., Pasley v. Freeman,* 3 T.R. 51, 65, 100 Eng. Rep. 450, 457 (1789) (if "no injury is occasioned by the lie, it is not actionable: but if it be attended with a damage, it then becomes the subject of an action"); *Freeman v. Venner,* 120 Mass. 424, 426 (1876) (a mortgagee cannot bring a tort action for damages stemming from a fraudulent note that a misrepresentation led him to execute unless and until the note has to be paid); see also M. Bigelow, Law of Torts 101 (8th ed.1907) (damage "must already have been suffered before the bringing of the suit"); 2 T. Cooley, Law of Torts § 348, p. 551 (4th ed.1932) (plaintiff must show that he "suffered damage" and that the "damage followed proximately the deception"); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 110, p. 765 (5th ed.1984) (hereinafter Prosser and Keeton) (plaintiff "must have suffered substantial damage," not simply nominal damages, before "the cause of action can arise").

Given the common-law roots of the securities fraud action (and the common-law requirement that a plaintiff show actual damages), it is not surprising that other Courts of Appeals have rejected the Ninth Circuit's "inflated purchase price" approach to proving causation and loss. See, **\*1633*e.g., Emergent Capital,* 343 F.3d, at 198 (inflation of purchase price alone cannot satisfy loss causation); *Semerenko,* 223 F.3d, at 185 (same); *Robbins,* 116 F.3d, at 1448 (same); cf. *Bastian,* 892 F.2d, at 685. Indeed, the Restatement of Torts, in setting forth the

judicial consensus, says that a person who "misrepresents the financial condition of a corporation in order to sell its stock" becomes liable to a relying purchaser "for the loss" the purchaser sustains "when the facts ... become generally known" and "as a result" share value "depreciate[s]." § 548A, Comment *b,* at 107. Treatise writers, too, have emphasized the need to prove proximate causation. Prosser and Keeton § 110, at 767 (losses do "not *345 afford any basis for recovery" if "brought about by business conditions or other factors").

We cannot reconcile the Ninth Circuit's "inflated purchase price" approach with these views of other courts. And the uniqueness of its perspective argues against the validity of its approach in a case like this one where we consider the contours of a judicially implied cause of action with roots in the common law.

Finally, the Ninth Circuit's approach overlooks an important securities law objective. The securities statutes seek to maintain public confidence in the marketplace. See *United States v. O'Hagan,* 521 U.S. 642, 658, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997). They do so by deterring fraud, in part, through the availability of private securities fraud actions. *Randall v. Loftsgaarden,* 478 U.S. 647, 664, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986). But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause. Cf. *Basic,* 485 U.S., at 252, 108 S.Ct. 978 (White, J., joined by O'CONNOR, J., concurring in part and dissenting in part) ("[A]llowing recovery in the face of affirmative evidence of nonreliance-would effectively convert Rule 10b-5 into a scheme of investor's insurance. There is no support in the Securities Exchange Act, the Rule, or our cases for such a result" (internal quotation marks and citations omitted)).

The statutory provision at issue here and the paragraphs that precede it emphasize this last mentioned objective. Private Securities Litigation Reform Act of 1995, 109 Stat. 737. The statute insists that securities fraud complaints "specify" each misleading statement; that they set forth the facts "on which [a] belief" that a statement is misleading was "formed"; and that they "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(1), (2). And the statute expressly imposes

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

125 S.Ct. 1627
544 U.S. 336, 125 S.Ct. 1627, Blue Sky L. Rep. P 74,529, 161 L.Ed.2d 577, 73 USLW 4283, Fed. Sec. L. Rep. P 93,218, 05 Cal. Daily Op. Serv. 3273, 2005 Daily Journal D.A.R. 4419, 18 Fla. L. Weekly Fed. S 233
(Cite as: 544 U.S. 336, 125 S.Ct. 1627)

on plaintiffs "the burden of proving" that the defendant's misrepresentations *346 "caused the loss for which the plaintiff seeks to recover."§ 78u-4(b)(4).

The statute thereby makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss. By way of contrast, the Ninth Circuit's approach would allow recovery where a misrepresentation leads to an inflated purchase price but nonetheless does not proximately cause any economic loss. That is to say, it would permit recovery where these two traditional elements in fact are missing.

In sum, we find the Ninth Circuit's approach inconsistent with the law's requirement that a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss. We need **1634 not, and do not, consider other proximate cause or loss-related questions.

B

[2] Our holding about plaintiffs' need to *prove* proximate causation and economic loss leads us also to conclude that the plaintiffs' complaint here failed adequately to *allege* these requirements. We concede that the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). And we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss. But, even so, the "short and plain statement" must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint before us fails this simple test.

As we have pointed out, the plaintiffs' lengthy complaint contains only one statement that we can fairly read as describing the loss caused by the defendants' "spray device" *347 misrepresentations. That statement says that the plaintiffs "paid artificially inflated prices for Dura['s] securities" and suffered "damage[s]." App. 139a. The statement implies that the plaintiffs' loss consisted of the

"artificially inflated" purchase "prices." The complaint's failure to claim that Dura's share price fell significantly after the truth became known suggests that the plaintiffs considered the allegation of purchase price inflation alone sufficient. The complaint contains nothing that suggests otherwise.

For reasons set forth in Part II-A, *supra*, however, the "artificially inflated purchase price" is not itself a relevant economic loss. And the complaint nowhere else provides the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation concerning Dura's "spray device."

We concede that ordinary pleading rules are not meant to impose a great burden upon a plaintiff. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513-515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). But it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind. At the same time, allowing a plaintiff to forgo giving any indication of the economic loss and proximate cause that the plaintiff has in mind would bring about harm of the very sort the statutes seek to avoid. Cf. H.R. Conf. Rep. No. 104-369, p. 31 (1995), U.S.Code Cong. & Admin.News 1995, pp. 679, 730 (criticizing "abusive" practices including "the routine filing of lawsuits ... with only [a] faint hope that the discovery process might lead eventually to some plausible cause of action"). It would permit a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence." Blue Chip Stamps, 421 U.S., at 741, 95 S.Ct. 1917. Such a rule would tend to transform a private *348 securities action into a partial downside insurance policy. See H.R. Conf. Rep. No. 104-369, at 31, U.S.Code Cong. & Admin.News 1995, pp. 679, 730; see also Basic, supra, at 252, 108 S.Ct. 978 (White, J., joined by O'CONNOR, J., concurring in part and dissenting in part).

For these reasons, we find the plaintiffs' complaint legally insufficient. We reverse the judgment of the Ninth Circuit, and we **1635 remand the case for further proceedings consistent with this opinion.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

125 S.Ct. 1627

544 U.S. 336, 125 S.Ct. 1627, Blue Sky L. Rep. P 74,529, 161 L.Ed.2d 577, 73 USLW 4283, Fed. Sec. L. Rep. P 93,218, 05 Cal. Daily Op. Serv. 3273, 2005 Daily Journal D.A.R. 4419, 18 Fla. L. Weekly Fed. S 233

**(Cite as: 544 U.S. 336, 125 S.Ct. 1627)**

*It is so ordered.*

U.S.,2005.
Dura Pharmaceuticals, Inc. v. Broudo
544 U.S. 336, 125 S.Ct. 1627, Blue Sky L. Rep. P 74,529, 161 L.Ed.2d 577, 73 USLW 4283, Fed. Sec. L. Rep. P 93,218, 05 Cal. Daily Op. Serv. 3273, 2005 Daily Journal D.A.R. 4419, 18 Fla. L. Weekly Fed. S 233

END OF DOCUMENT

Westlaw.

466 F.3d 1255                                                                                     Page 1
466 F.3d 1255, Fed. Sec. L. Rep. P 93,976, 20 Fla. L. Weekly Fed. C 26
(Cite as: 466 F.3d 1255)

C

United States Court of Appeals, Eleventh Circuit.
Robert GARFIELD, individually and on behalf of all
others similarly situated, The DeKalb County Pen-
sion Plan, Plaintiffs-Appellants,
v.
NDC HEALTH CORPORATION, Walter M. Hoff,
Randolph L.M. Hutto, Charles W. Miller, David H.
Shenk, James W. Fitzgibbons, Lee Adrean, Ernst &
Young, LLP, Defendants-Appellees.
No. 05-14765.

Oct. 12, 2006.

**Background:** Investors brought securities fraud
action against corporation and its accounting firm.
The United States District Court for the Northern
District of Georgia, No. 04-00970-CV-WSD-
1,William S. Duffey, Jr., J., dismissed action. Inves-
tors appealed.

**Holdings:** The Court of Appeals, Alarcón, Circuit
Judge, sitting by designation, held that:
(1) allegations were insufficient to satisfy particular-
ity requirement to plead scienter in securities fraud
action against corporation;
(2) investors lacked standing to bring securities fraud
claim based on corporation's alleged misstatement of
the value of a failed investment in another company;
(3) allegations did not state claim against accounting
firm; and
(4) District Court's restrictions on investors' right to
amend complaint were reasonable.

Affirmed.

West Headnotes

[1] Securities Regulation 349B ⬡60.27(6)

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.17 Manipulative, Deceptive
or Fraudulent Conduct
                    349Bk60.27 Misrepresentation

349Bk60.27(6) k. Financial or
Periodic Reports; Accounting Data and Valuations.
Most Cited Cases
"Channel stuffing," whereby a company floods dis-
tribution channels by employing incentives to induce
customers into purchasing their products in large
quantities, creating a short-term bump in revenue and
excess supply in the distribution chain, is not fraudu-
lent per se, for purpose of § 10(b) and Rule 10b-5.
Securities Exchange Act of 1934, § 10(b), 15
U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

[2] Federal Civil Procedure 170A ⬡1832

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered in
General. Most Cited Cases

Federal Civil Procedure 170A ⬡2533.1

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2533 Motion
                    170Ak2533.1 k. In General. Most
Cited Cases
Normally, once the court decides to accept matters
outside the pleading, it must convert the motion to
dismiss into one for summary judgment. Fed.Rules
Civ.Proc.Rule 12(b), 28 U.S.C.A.

[3] Federal Courts 170B ⬡590

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(C) Decisions Reviewable
            170BVIII(C)2 Finality of Determination
                170Bk585 Particular Judgments, De-
crees or Orders, Finality
                    170Bk590 k. Dismissal of Pleadings
in General. Most Cited Cases
Where an order dismisses a complaint with leave to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

amend within a specified period, the order becomes final, and therefore appealable when the time period allowed for amendment expires. 28 U.S.C.A. § 1291.

**[4] Federal Courts 170B ☞590**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(C) Decisions Reviewable
      170BVIII(C)2 Finality of Determination
       170Bk585 Particular Judgments, Decrees or Orders, Finality
        170Bk590 k. Dismissal of Pleadings in General. Most Cited Cases
A plaintiff need not wait until the expiration of the stated time for filing an amendment to the complaint in order to treat the district court's dismissal as final, but may appeal prior to the expiration of the stated time period. 28 U.S.C.A. § 1291.

**[5] Securities Regulation 349B ☞60.18**

349B Securities Regulation
   349BI Federal Regulation
     349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
       349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
        349Bk60.18 k. In General. Most Cited Cases
To allege securities fraud under § 10(b) and Rule 10b-5, a plaintiff must show: (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[6] Securities Regulation 349B ☞60.27(6)**

349B Securities Regulation
   349BI Federal Regulation
     349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
       349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
        349Bk60.27 Misrepresentation
         349Bk60.27(6) k. Financial or Periodic Reports; Accounting Data and Valuations. Most Cited Cases

Channel stuffing may amount to fraudulent conduct in violation of § 10(b) and Rule 10b-5 when it is done to mislead investors. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[7] Federal Civil Procedure 170A ☞636**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
     170AVII(A) Pleadings in General
      170Ak633 Certainty, Definiteness and Particularity
       170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
The particularity requirement for pleading fraud is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making, or, in the case of omissions, not making, same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[8] Securities Regulation 349B ☞60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
     349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
       349Bk60.50 Pleading
        349Bk60.51 In General
         349Bk60.51(2) k. Scienter. Most Cited Cases
   (Formerly 349Bk60.53)
Allegations by investors that corporation began to capitalize costs well before its development projects reached technological feasibility, that it amortized costs over periods much greater than economic life of its assets, that it applied an excessive burden factor to its capitalized costs, that officers knew that accounts receivable were very high as result of channel-stuffing practices, and that officers signed personal certification of corporation's financial statement as required by the Sarbanes-Oxley Act, were insufficient to satisfy particularity requirement to plead scienter in securities fraud action against corporation, under the Private Securities Litigation Reform Act

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(PSLRA), absent allegations that specific officers knew of accounting irregularities, that they intended to deceive investors, or that there were glaring accounting irregularities or misleading statements on corporation's financial reports. Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2); 18 U.S.C.A. § 1350; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[9] Securities Regulation 349B** ⚯══60.51(2)

349B Securities Regulation
  349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
        349Bk60.50 Pleading
          349Bk60.51 In General
            349Bk60.51(2) k. Scienter. Most Cited Cases
    (Formerly 349Bk60.51)
In a securities fraud action, factual allegations may be aggregated to infer scienter and must be inferred for each defendant with respect to each violation. Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2).

**[10] Securities Regulation 349B** ⚯══60.51(2)

349B Securities Regulation
  349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
        349Bk60.50 Pleading
          349Bk60.51 In General
            349Bk60.51(2) k. Scienter. Most Cited Cases
    (Formerly 349Bk60.51)
A securities fraud plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner. Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2); Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[11] Securities Regulation 349B** ⚯══60.45(1)

349B Securities Regulation
  349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation

        349Bk60.43 Grounds of and Defenses to Liability
        349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
          349Bk60.45(1) k. In General. Most Cited Cases
"Severe recklessness," as required to meet scienter requirement of securities fraud action, is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

**[12] Securities Regulation 349B** ⚯══60.51(1)

349B Securities Regulation
  349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
        349Bk60.50 Pleading
          349Bk60.51 In General
            349Bk60.51(1) k. In General.
Most Cited Cases
    (Formerly 349Bk60.51)
Claims of securities fraud cannot rest on speculation and conclusory allegations.

**[13] Statutes 361** ⚯══188

361 Statutes
  361VI Construction and Operation
    361VI(A) General Rules of Construction
      361k187 Meaning of Language
        361k188 k. In General. Most Cited Cases
A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.

**[14] Statutes 361** ⚯══190

361 Statutes
  361VI Construction and Operation
    361VI(A) General Rules of Construction
      361k187 Meaning of Language
        361k190 k. Existence of Ambiguity.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Most Cited Cases

When construing the meaning of a statute, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished.

**[15] Statutes 361 ☞159**

361 Statutes
   361V Repeal, Suspension, Expiration, and Revival
      361k159 k. Implied Repeal by Inconsistent or Repugnant Act. Most Cited Cases

**Statutes 361 ☞223.1**

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k223 Construction with Reference to Other Statutes
            361k223.1 k. In General. Most Cited Cases

When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.

**[16] Securities Regulation 349B ☞60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
         349Bk60.50 Pleading
            349Bk60.51 In General
               349Bk60.51(2) k. Scienter. Most Cited Cases
    (Formerly 349Bk60.51)

A Sarbanes-Oxley Act certification of a company's financial statements is only probative of scienter, under the Private Securities Litigation Reform Act (PSLRA), if the person signing the certification is severely reckless in certifying the accuracy of the financial statements. Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2); 18 U.S.C.A. § 1350.

**[17] Securities Regulation 349B ☞60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
         349Bk60.50 Pleading
            349Bk60.51 In General
               349Bk60.51(2) k. Scienter. Most Cited Cases
    (Formerly 349Bk60.51)

A person signing a certification of the financial statements of a corporation required by Sarbanes-Oxley, is "severely reckless," as may prove scienter requirement under the Private Securities Litigation Reform Act (PSLRA), if the person had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other red flags, that the financial statements contained material misstatements or omissions. Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2); 18 U.S.C.A. § 1350.

**[18] Securities Regulation 349B ☞60.37**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
         349Bk60.35 Persons Entitled to Sue or Recover
         349Bk60.37 k. Buyers or Sellers. Most Cited Cases

Investors lacked standing to bring a securities fraud claim against corporation for its alleged material misstatement of the value of a failed investment in another company, where investors they did not buy corporation's stock until long after the impact of the sale of the other company was realized. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

**[19] Securities Regulation 349B ☞60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
         349Bk60.50 Pleading
            349Bk60.51 In General
               349Bk60.51(2) k. Scienter. Most Cited Cases
    (Formerly 349Bk60.51)

Drastic overstatement of accounts, or other red flags, combined with alleged violations of standard accounting practices, may be enough to establish the requisite level scienter for a claim against an accounting firm under the Private Securities Litigation Reform Act (PSLRA). Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2).

**[20] Securities Regulation 349B ☞60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
     349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
       349Bk60.50 Pleading
        349Bk60.51 In General
         349Bk60.51(2) k. Scienter. Most Cited Cases
         (Formerly 349Bk60.53)

Allegations by investors against accounting firm that conducted independent audits of corporation, that corporation dramatically increased its allowance for doubtful accounts, that analysis of doubtful accounts, related charge-offs, and recoveries for certain fiscal years revealed pattern strongly suggesting that corporation concealed overstated revenues, that accounting firm was notified that corporation's accounts receivables were very high because of questionable channel-stuffing practices, and that accounting firm failed to follow standard auditing procedures were insufficient to satisfy particularity requirement to plead scienter in securities fraud action against corporation, under the Private Securities Litigation Reform Act (PSLRA), absent allegations that such increased allowances were so irregular as to put accounting firm on notice of fraud, that accounting firm took no action after it was notified of questionable practices, or how firm violated standard auditing procedures. Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2); Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[21] Securities Regulation 349B ☞60.51(1)**

349B Securities Regulation
   349BI Federal Regulation
     349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
       349Bk60.50 Pleading
        349Bk60.51 In General
         349Bk60.51(1) k. In General.

Most Cited Cases
         (Formerly 349Bk60.51)

Allegations of violations of standard accounting practices, standing alone, do not satisfy the particularity requirement for proving a securities fraud claim. Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2); Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[22] Federal Courts 170B ☞817**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)4 Discretion of Lower Court
       170Bk817 k. Parties; Pleading. Most Cited Cases

Denial of leave to amend is reviewed for abuse of discretion. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[23] Federal Civil Procedure 170A ☞833**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
     170AVII(E) Amendments
      170Ak833 k. Liberality in Allowing Amendment. Most Cited Cases

In the absence of any apparent or declared reason for a motion for leave to amend a complaint, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, the leave sought should be freely given. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[24] Federal Civil Procedure 170A ☞850**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
     170AVII(E) Amendments
      170Ak850 k. Conditions on Allowance. Most Cited Cases

District Court's restrictions on investors' right to amend its securities fraud complaint, limiting the amendment to the legal theories already asserted, and permitting investors to assert any new facts to state a claim, were reasonable, where investors previously

466 F.3d 1255
466 F.3d 1255, Fed. Sec. L. Rep. P 93,976, 20 Fla. L. Weekly Fed. C 26
**(Cite as: 466 F.3d 1255)**

Page 6

filed two amended complaints. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[25] Federal Civil Procedure 170A ☜➝850**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
     170AVII(E) Amendments
      170Ak850 k. Conditions on Allowance.
Most Cited Cases
In the exercise of sound discretion, the granting of a motion for leave to amend a complaint can be conditioned in order to avoid prejudice to the opposing party. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[26] Federal Civil Procedure 170A ☜➝850**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
     170AVII(E) Amendments
      170Ak850 k. Conditions on Allowance.
Most Cited Cases
Any conditions placed on a plaintiff's right to amend its complaint must be reasonable. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**\*1259** Joseph P. Helm, III, Chitwood Harley Harnes, LLP, Martin D. Chitwood, Stuart J. Guber, Motley Rice, LLC, Atlanta, GA, for Plaintiffs-Appellants. Todd R. David, Jessica Perry Corley, Alston & Bird, LLP, Dan S. McDevitt, M. Robert Thornton, King & Spalding, Elizabeth Vranicar Tanis, Laurance Joseph Warco, Jason Scott Alloy, Sutherland, Asbill & Brennan, Atlanta, GA, Jerome S. Hirsch, Gary J. Hacker, Joseph N. Sacca, Skadden Arps Slate Meagher & Flom, LLP, New York CIty, Bruce M. Cormier, Ernst & Young, LLP, Washington, DC, for Defendants-Appellees.

Appeal from the United States District Court for the Northern District of Georgia.

Before EDMONDSON, Chief Judge, and BIRCH and ALARCÓN,[FN*] Circuit Judges.

   FN* Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

ALARCÓN, Circuit Judge:

Lead Plaintiff DeKalb County Pension Fund ("DeKalb") appeals from the District Court's Order dismissing its Second Amended Complaint for failure to meet the heightened requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z-1, 78u. We affirm the District Court's Order dismissing the Second Amended Complaint and hold that DeKalb waived its right to further amendment of its Complaint by taking the instant appeal.

I

On April 07, 2004 DeKalb brought a claim in the United States District Court for the Northern District of Georgia for securities fraud as a putative class action against NDCHealth Corporation ("NDC"), several of its officers ("Individual Defendants"), and the accounting firm Ernst and Young LLP ("E&Y"). DeKalb set forth two causes of action in its Second Amended Complaint: (1) securities fraud pursuant to Section 10(b), 15 U.S.C. § 78i(b) and Rule 10b-5, 17 CFR § 240.10b-5; and (2) violation of Section 20(a) of the Exchange Act, 15 U.S.C. 78t.

[1] The gravamen of the Second Amended Complaint is that during the class period of August 21, 2002 through August 9, 2004, NDC "engaged in a variety of undisclosed accounting manipulations and business practices which caused the Company's financial results to be materially overstated." DeKalb alleges that NDC engaged in channel stuffing;[FN1] prematurely recognized sales revenue; did **\*1260** not follow Generally Accepted Accounting Principles; and materially misstated the value of a failed investment in a company known as MedUnite. E&Y is being sued because it served as NDC's independent auditor and issued audit opinions on the Company's 2003 and 2004 financial statements.

   FN1. Channel stuffing is a practice whereby a company floods distribution channels by employing incentives to induce customers into purchasing their products in large quantities, creating a short-term bump in revenue and excess supply in the distribution chain. See e.g. In re Scientific-Atlanta Inc., Securities Litigation, 239 F.Supp.2d 1351, 1355 (N.D.Ga.2002) (" 'channel stuffing' has the effect of shifting earnings into earlier quarters to the detriment of earnings in later

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

quarters.").

[2] NDC and E&Y filed motions to dismiss DeKalb's Second Amended Complaint on October 13, 2004. After the opposition and reply papers were filed, on January 5, 2005, NDC filed a Form 8-K and a Form 12b-25 document with the SEC disclosing that it would restate its accounts for the prior period "beginning with its fiscal year ended May 31, 2002 through the first quarter of fiscal year 2005 ended August 27, 2004." The District Court took judicial notice of these documents.<sup>FN2</sup> The Second Amended Complaint contains no allegation regarding the restatement of accounts.

> FN2. On a motion to dismiss for failure to state a claim upon which relief can be granted, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. Rule 12(b). Normally, "once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment." *Property Mgmt. & Inv., Inc., v. Lewis,* 752 F.2d 599, 604 (11th Cir.1985) (citing *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972)). However, in the context of securities fraud, "SEC documents [may be treated] as public records capable of being judicially noticed at the motion to dismiss stage." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1280 (11th Cir.1999). By taking judicial notice of SEC documents, the District Court did not transform Defendants' motions to dismiss into a motion for summary judgment. *Id.*

The District Court dismissed Appellant's Second Amended Complaint on July 27, 2005 with leave to amend. The order states: "Plaintiff shall file its Third Amended Complaint within thirty (30) days of entry of this Order, and Defendants shall file their motions to dismiss within thirty (30) days of the filing of the Third Amendment." *In re NDC Health Corp. Inc.,* No. 1:04-cv-0970, slip op. at 53 (N.D.Ga. July 27, 2005). Instead of filing a third amended complaint,

DeKalb filed a Notice of Appeal on August 26, 2005, the last day of the period allotted for filing an amended complaint.

## II

On September 13, 2005, this Court inquired *nostra sponte* whether the District Court's Order of July 27, 2005 constitutes a final appealable order. In response, the parties agreed that "[g]enerally, an order dismissing a complaint is not final and appealable unless the order holds that it dismisses the entire action or that the complaint cannot be saved by amendment." *Van Poyck v. Singletary,* 11 F.3d 146, 148 (11th Cir.1994) (citing *Czeremcha v. Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO,* 724 F.2d 1552, 1554-55 (11th Cir.1984)).

[3][4] "[W]here an order dismisses a complaint with leave to amend within a specified period, the order becomes final (and therefore appealable) when the time period allowed for amendment expires." *Briehler v. Miami,* 926 F.2d 1001, 1002 (11th Cir.1991). However, "the plaintiff need not wait until the expiration of the stated time in order to treat the dismissal as final, but may appeal prior to the expiration of the stated time period." *Schuurman v. Motor Vessel "Betty K V,"* 798 F.2d 442, 445 (11th Cir.1986). Accordingly, this Court has jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291. By filing an appeal in this manner, however, *1261 DeKalb elected to stand on its Second Amended Complaint and waived its right to further amendment. *Schuurman,* 798 F.2d at 445 ("Once the plaintiff chooses to appeal before the expiration of time allowed for amendment, however, the plaintiff waives the right to later amend the complaint, even if the time to amend has not yet expired.").

## III

DeKalb argues the District Court erred in dismissing its Second Amended Complaint because, in determining that DeKalb did not plead facts sufficient to give rise to a strong inference of scienter, "[t]he District Court failed to consider all of the facts pled and also failed to view the allegations in a light most favorable to Appellant." (Appellant's Br. 34.) DeKalb also argues that "the District Court erred in determining that Appellant failed to plead the reasons for the falsity of the alleged misstatements and omissions with

requisite specificity." Finally, DeKalb assigns error to the District Court for "improperly impos[ing] conditions on Appellant's right to amend its complaint."

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." _Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n. 1 (11th Cir.1999)._ The "court reviews _de novo_ the dismissal of a complaint pursuant to _Rule 12(b)(6)._" _Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1187 (11th Cir.2002)._

[5] Section 10(b) and Rule10b-5 make it unlawful for any individual to employ a manipulative or deceptive device in connection with the purchase or sale of any security.[FN3] "To allege securities fraud under Rule 10b-5, a plaintiff must show: 1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury." _Bryant, 187 F.3d at 1281._

  FN3. Section 10(b), _15 U.S.C.S. § 78j_, provides:

  To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act [_15 USCS § 78c_ note]), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

  Rule 10b-5, _17 C.F.R. § 240.10b-5_, was promulgated under Section 10(b) and provides:

  It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make

the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Section 20(a) of the Exchange Act provides for liability of "controlling persons" who aid and abet "any person liable under any provision of this chapter or of any rule or regulation thereunder." _15 U.S.C. § 78t._ DeKalb's claims under Section 20(a) are alleged against the Individual Defendants, and predicated upon the same alleged unlawful conduct relevant to its claims under Section 10b. (Compl. ¶ 186.) Accordingly, the success of DeKalb's section 20(a) claim turns on the resolution of its claims under Section 10b and Rule 10b-5.

A

[6] Channel stuffing is not fraudulent _per se._ *1262_Greebel v. FTP Software, Inc., 194 F.3d 185, 202 (1st Cir.1999)_ ("There is nothing inherently improper in pressing for sales to be made earlier than in the normal course."). In _Greebel,_ the First Circuit commented that in the context of alleged improper revenue recognition, "channel stuffing evidence has some probative value. But that value is weak." _Id._ at 203; _but see In re Cabletron Sys., 311 F.3d 11, 26 (1st Cir.2002)_ (allegations of improper revenue recognition, including fictitious sales, and channel stuffing, were supported by averments of testimonial evidence from insiders and pled with adequate specificity to survive a motion to dismiss). The Seventh Circuit determined in _Makor Issues & Rights, Ltd., et al. v. Tellabs, Inc., 437 F.3d 588 (7th Cir.2006)_ that "[w]hile there may be legitimate reasons for attempting to achieve sales earlier via channel stuffing, providing excess supply to distributors in order to create a misleading impression in the market of the company's financial health is not one of them." _Id._ at 598. We agree with the Seventh Circuit that channel stuffing may amount to fraudulent conduct when it is done to mislead investors, but the allegations of channel stuffing in the instant case were not pled with sufficient detail to overcome the PSLRA's scienter hurdle.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

[7] Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[FN4] Fed.R.Civ.P. Rule 9(b). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.' " *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)). "A sufficient level of factual support for a [10b] claim may be found where the circumstances of the fraud are pled in detail. 'This means the who, what, when where, and how: the first paragraph of any newspaper story.' " *Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1470 (N.D.Ga.1997) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)).

> FN4. Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. Rule 9(b).

For claims brought under the Exchange Act, including Appellants' claims under Section 10b and Section 20a, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).[FN5]

> FN5. Section 77u-4(b) provides:
>
> (1) Misleading statements and omissions In any private action arising under this chapter in which the plaintiff alleges that the defendant-
>
> (A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

*1263 [8] DeKalb argues that it set forth a claim satisfying the requirements of Rule 9(b) and the PSLRA when it alleged that NDC understated expenses in violation of GAAP in three ways: "(1) it began to capitalize costs well before its development projects reached 'technological feasibility;' (2) it amortized costs over periods much greater than the economic life of its software assets; and (3) it applied an excessive burden factor to its capitalized costs, thereby expensing less than necessary in the present term." In discounting this argument, the District Court stated "Plaintiff's allegations are thin, and are based almost entirely on statements by an undisclosed former executive in the Physician Services Group." *In Re NDC Health Corp. Inc.*, No. 1:04-cv-0970, slip op. at 44.

The District Court did not err because DeKalb's allegations regarding amortization and capitalization are vague and difficult to evaluate. For example, the Second Amended Complaint does not specify when the improper accounting occurred. It also fails to allege how and what products were improperly capitalized or amortized.

DeKalb also argues that the District Court erred in holding that DeKalb's allegations regarding material misstatement in NDC's financial statements were overly speculative and amount to nothing more than "non-actionable corporate mismanagement." The District Court determined that "the financial reporting was itself accurate" and the reports "accurately reflected the performance of the Company." At the time the District Court issued its opinion, NDC had already declared its intention to restate its accounts. On January 05, 2005, NDC filed a disclosure with the SEC stating that it "identified certain practices regarding the exchange of physician software inventory

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

held by the Company's value-added resellers that were inconsistent with Company policies." Accordingly, NDC announced that "after discussion with the Company's independent accountants, on January 4, 2005, the Audit Committee of the Board of Directors determined it is appropriate to restate prior-period results beginning with its fiscal year ended May 32, 2002 through the first quarter of fiscal year 2005 ended August 27, 2004." NDC also noted that "[t]he restatement will also include other identified adjustments from prior periods." It follows that NDCs prior financial reporting may not have been accurate and may not have reflected the performance of the company.

DeKalb elected to stand on its Second Amended Complaint. NDC's intention to restate its accounts is not alleged in the Second Amended Complaint. Because DeKalb waived its right to file a third amended complaint, we limited our review to the facts set forth in the Second Amended Complaint instead of speculating whether DeKalb could have filed a third amended complaint that would have met the pleading requirements of the PSLRA and Rule 9(b).

Turning to the allegations set forth in the Second Amended Complaint, DeKalb maintains that it alleged improper revenue recognition with adequate specificity by stating that in March of 2004, "a management level employee in the Physician Services unit" notified E&Y of a "dire situation facing that business segment-that accounts receivable were very high as a result of aggressive channel-stuffing practices, which rendered the unit's reported revenues highly suspect." (Compl. ¶ 61.) According to DeKalb, NDC "determined that approximately $25 million of inventory was in the channel as of March 31, 2004." (Id. at ¶ 63.) The Second Amended Complaint goes on to state that, after management learned of this information, NDC decided to "delay its earning release pending*1264 a review of its revenue recognition practices in the Physician Services Unit."(Id.) In sum, DeKalb alleged that NDC issued erroneous financial statements that contained substantial misstatements due to the improper recognition of revenue and channel stuffing in the Physician Services Unit.

DeKalb also alleged that "Defendants sought to conceal their improper revenue recognition by increasing reserves and taking large, year-end charges for uncol-

lected receivables, without explanation." Absent from these allegations are any detailed allegations of scienter with respect to the alleged misrepresentations.

B

[9] DeKalb argues it was plain error for the District Court to conclude "that the Complaint does not contain allegations sufficient to give rise to a strong inference of scienter with respect to Appellees[.]" A complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).FN6 "This [statutory] requirement alters the usual contours of a Rule 12(b)(6) ruling because, while a court continues to give all reasonable inferences to plaintiffs, those inferences supporting scienter must be strong ones." In re Cabletron Sys., 311 F.3d at 28 (citing Greebel, 194 F.3d 185, 201 (1st Cir.1999)). "[F]actual allegations may be aggregated to infer scienter and must be inferred for each defendant with respect to each violation." Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1016 (11th Cir.2004).

FN6. Section 77u-4(b)(2) provides:

(2) Required state of mind

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

[10][11] DeKalb contends "the District Court fail[ed] to properly consider all scienter allegations in the aggregate, [and] the Court patently failed to interpret the allegations in a light most favorable to Appellant." "[A] securities fraud plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner." Bryant, 187 F.3d at 1287. " 'Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not

466 F.3d 1255
466 F.3d 1255, Fed. Sec. L. Rep. P 93,976, 20 Fla. L. Weekly Fed. C 26
(Cite as: 466 F.3d 1255)

Page 11

merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.' " *Id.* at 1282 n. 18 (quoting *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir.1989)).

Turning to the salient allegations of scienter set forth in the Second Amended Complaint, DeKalb alleged that Defendants Hoff and Miller attended monthly operations meetings in Arizona and "every aspect of the Physician Services business was discussed in detail, including the aggressive channel stuffing and mounting problems with accounts receivable (sic)." (Compl. ¶ 56.) In the Second Amended Complaint, DeKalb alleged that testimonial evidence provided by a "former senior executive" would show Defendants Miller and Hoff knew there was a problem with "mounting accounts receivable" but decided to continue with "aggressive discounting and credit terms" because the company had to "make its numbers."[FN7]

> FN7. In its Second Amended Complaint, DeKalb avers:
>
> According to the former senior executive, Defendants Miller and Hoff often discussed the difficult tension between the rising accounts receivable and the aggressive discounting and extended credit terms being given to VARs on the one hand, and the need for the Company to "make its numbers," on the other. The senior executive related that Hoff and Miller remarked that the Company was "quarter driven," and that the need to sustain reported revenue growth outweighed the need to properly address the mounting accounts receivable and the attendant questionable revenue recognition. Instead of addressing growing concerns of managers in the unit that the aggressive discounting, channel-stuffing, and extended credit terms ... were creating serious realizability (sic) concerns ... Defendants Hoff and Miller directed the unit to forge ahead and continue to aggressively stuff the channel in order to give the appearance of robust revenue growth.

(Compl. ¶ 57.)

*1265 [12] Absent from these allegations are any particularized averments of fraud or scienter. In *Theoharous v. Fong*, 256 F.3d 1219 (11th Cir.2001), this Court held that scienter was not pled with adequate specificity "because the plaintiffs did not allege the *context* in which Fong made this statement, [and] it does not appear from the face of the complaint that Fong must have known that the statement presented a danger of misleading buyers or sellers." *Id.* at 1225.

As in *Fong*, DeKalb's broad claim of testimonial evidence is not set forth with requisite detail because DeKalb failed to allege what was said at the meeting, to whom it was said, or in what context. Accordingly, the averment lacks the requisite particularity. It is well established that "claims of securities fraud cannot rest 'on speculation and conclusory allegations.' " *Hoffman v. Comshare, Inc. (In re Comshare Inc. Sec. Litig.)*, 183 F.3d 542, 553 (6th Cir.1999) (quoting *San Leandro Emergency Med. Plan v. Philip Morris Co.*, 75 F.3d 801, 813 (2d Cir.1996)). A general allegation that Individual Defendants promoted channel stuffing at a series of meetings does not establish scienter.

DeKalb also avers that the Individual Defendants, Mssrs. Hoff, Hutto and Miller, made a PowerPoint presentation in Atlanta on March 1, 2004 that "contained several statements identifying problems with the VAR channel." The presentation included discussion of the following topics: "Heavy promotion discounting to drive VAR sales," and "Change ordering/buying behavior of Vars from Q/E promotion discount buying to pull through demand buying and add additional VARs". DeKalb also alleges: "Identified as 'Conditions for Success/Risks' (sic) were 'VAR accounts receivable collections' and 'Visibility into VAR inventory levels and outbound programs/assistance to move inventory physician practices (pull through sales).' " DeKalb maintains that these allegations establish a strong inference of scienter on the part of the individual defendants. We disagree.

Viewing these confusing statements in the best possible light, it is possible to surmise that the Individual Defendants might have been aware of improper revenue recognition in the VAR channel and also knew that they needed to increase actual sales rather than

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

"promot[e] discount buying." But that conclusion is based on multiple inferences and drawn from somewhat baffling language. DeKalb failed to allege what was actually discussed at the meeting. Accordingly, the allegation regarding the meeting of March 1, 2004, does not give rise to a strong inference of scienter.

DeKalb also argues that the personal certifications required by the Sarbanes-Oxley Act and signed by senior executives "are indicia of Defendants' scienter." DeKalb contends that by signing the certification, Defendants represented to the general public that: "(1) they reviewed the filing being certified; (2) the report did not contain any untrue statement of material *1266 fact ...; (3) the report fairly presented the financial condition of the company; and (4) they designed the disclosure controls and procedures to ensure that material information relating to the Company was disclosed to them for the period in question."

The plain meaning of the language contained in Sarbanes-Oxley, 18 U.S.C. § 1350, does not indicate any intent to change the requirements for pleading scienter set forth in the PSLRA, 15 U.S.C. § 78u-4(2). Sarbanes-Oxley requires that the chief executive officer and chief financial officer certify "[e]ach periodic report containing financial statements filed by an issuer with the Securities and Exchange Commission ..." 18 U.S.C. § 1350(a). The statute also provides for imprisonment of up to 10 years or a fine of $1,000,000 for any person who "certifies a periodic financial statement ... knowing that the periodic report accompanying the statement does not comport with all the requirements set forth in [section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a) or 78o(d))] ..." 18 U.S.C. § 1350(c). An individual who "willfully certifies" such a statement is subject to a prison term of 20 years and a fine of up to $5,000,000. Nowhere in the statute is there any mention of civil liability or pleading requirements for scienter in civil actions brought for securities fraud.

[13][14] "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." _Perrin v. United States,_ 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (citing _Burns v. Alcala,_ 420 U.S. 575, 580-81, 95

S.Ct. 1180, 43 L.Ed.2d 469 (1975)). When construing the meaning of a statute, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." _Estate of Cowart v. Nicklos Drilling Co.,_ 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) (citing _Demarest v. Manspeaker,_ 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991)). In the instant case, the statute does not speak to the issue of pleading scienter. The plain language of Sarbanes-Oxley evidences no congressional intent to alter the pleading requirements set forth in the PSLRA. 18 U.S.C. § 1350.

[15] DeKalb's interpretation of Sarbanes-Oxley conflicts with the plain language of the PSLRA. " '[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.' " _J.E.M. Ag Supply v. Pioneer Hi-Bred Int'l,_ 534 U.S. 124, 143-44, 122 S.Ct. 593, 151 L.Ed.2d 508 (2001) (quoting _Morton v. Mancari,_ 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). If we were to accept DeKalb's proffered interpretation of Sarbanes-Oxley, scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA. We decline to adopt such an interpretation.

[16][17] Instead, we hold that a Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements. This requirement is satisfied if the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other "red flags," that the financial statements contained material misstatements or omissions. In the instant case, there are no allegations in the Second Amended Complaint that indicate the *1267 presence of such "red flags" in the company's financial statements.

The Second Amended Complaint states that "the Physician Services accounts receivable grew from $200,000 to almost $11 million in approximately eighteen months beginning in late 2002." By way of comparison, NDC announced that its revenue for the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

466 F.3d 1255
466 F.3d 1255, Fed. Sec. L. Rep. P 93,976, 20 Fla. L. Weekly Fed. C 26
(Cite as: 466 F.3d 1255)

third quarter of 2003 was $116.1 million and net income was only $9.3 million. DeKalb alleged that "[i]n the fourth quarter (ended May 30, 2003 ...), NDC increased its allowance for doubtful accounts by $4.26 million, nearly seven times the average for the three previous quarters." (Compl. ¶ 68.) Those numbers are somewhat alarming because they indicate a relatively large amount of revenue that might never be realized. But those statements themselves do not appear to be untrue or misleading.

Viewing the allegations individually and in aggregate, the facts set forth in the Second Amended Complaint do not create a "strong inference" of scienter. *See* 15 U.S.C. § 78u-4(b)(2) (mandating "strong inference that the defendant acted with the required state of mind.") Accordingly, the District Court did not err in dismissing DeKalb's Second Amended Complaint.

### C

[18] NDC argues that DeKalb did not have standing to bring a claim regarding the stated value of MedUnite because DeKalb did not purchase any stock until after the alleged fraudulent conduct occurred. DeKalb alleged that the impact of the sale of MedUnite was realized on March 19, 2003. (Compl. ¶ 75.) But DeKalb did not buy stock until March 10 and 11, 2004. Accordingly DeKalb did not have standing to bring this claim because they did not buy the stock until long after the impact of the sale was realized. *See Marsh v. Armada Corp.*, 533 F.2d 978, 981-82 (6th Cir.1976) ("Standing is established by allegations that plaintiffs bought or sold shares of the stock in question within a reasonable period of time after the allegedly fraudulent conduct occurred to support an inference of reliance."); *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (holding that "the plaintiff class for purposes of a private damage action under § 10(b) and Rule 10b-5 [i]s limited to actual purchasers and sellers of securities.").

### IV

DeKalb argues that the District Court erred in dismissing its Complaint against E&Y because E&Y certified NDC's financial accounts even though their practices did not comport with Generally Accepted Accounting Principles ("GAAP") and Generally Ac-

cepted Auditing Standards ("GAAS").[FN8] DeKalb alleged that E&Y ignored "red flags" when it issued unqualified audits and financial statements in 2003 and 2004. (Compl. ¶¶ 151-54.)

> FN8. Generally Accepted Accounting Principles ("GAAP") are the "basic postulates and broad principles" that guide business accounting. *SEC v. Price Waterhouse*, 797 F.Supp. 1217, 1222-23 n.17 (S.D.N.Y.1992) (cited in *Ziemba*, 256 F.3d at 1200). GAAP is approved by the Auditing Standards Board of the American Institute of Certified Public Accountants ("AICPA"). *Id.* Generally Accepted Auditing Standards ("GAAS") are the standards prescribed by the AICPA for the conduct of auditors in the performance of an examination. *Id.* GAAP and GAAS establish guidelines for measuring, recording, and classifying a business entity's transactions. *Id.*

### A

[19] DeKalb argues that anomalous increases in NDC's reserve for doubtful accounts put E&Y "on notice of the other Defendant's fraudulent scheme." Drastic overstatement of accounts, or other red *1268 flags, combined with alleged violations of GAAS or GAAP may be enough to establish the requisite level scienter. *In re Eagle Bldg. Tech. Inc., Sec. Litig.*, 319 F.Supp.2d 1318, 1328 (S.D.Fla.2004) (finding sufficient particularity where fraudulent contracts made up 74% of the company's business, financial statements had 60 out of 75 line items restated, and red flags included *inter alia*, purchase order discrepancies in the hundreds of thousands, delivery discrepancies of 50% of goods, and post-dated license agreements); *see also In re Friedman's, Inc., Sec. Litig.*, 385 F.Supp.2d 1345, 1365-66 (N.D.Ga.2005) (finding a strong inference of scienter where auditing firm "had continuous arguments" with company management over allowance for uncollected accounts, the firm "knew that" the company was under-reserved, the firm discussed doubtful accounts every quarter, and the firm committed numerous GAAP and GAAS violations); *In re Hamilton Bankcorp., Inc., Sec. Litig.*, 194 F.Supp.2d 1353 (S.D.Fla.2002) (finding sufficient particularity where auditing firm committed numerous GAAP and GAAS violations and ignored an investigation by the Office of the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Comptroller of the Currency, the simultaneous sale and purchase of overpriced loans or securities to avoid write down on its books, and the corporation's failure to adhere to SEC requirements.

Red flags are "those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *In re Sunterra Corp. Sec. Litig., 199 F.Supp.2d 1308, 1334 (M.D.Fla.2002).* "It is established, however, that the purported red flags cannot simply 're-hash' the alleged GAAP violations." *In re Spear & Jackson Sec. Litig., 399 F.Supp.2d 1350, 1363 (S.D.Fla.2005)* (citing *Holmes v. Baker, 166 F.Supp.2d 1362, 1379 (S.D.Fla.2001)).*

[20] DeKalb alleged that E&Y was put on notice of fraudulent activity by NDC's increased allowance for "doubtful accounts" in the fourth quarter of 2003 and 2004. (Compl. ¶ 67.) DeKalb also claimed that "[a]n analysis of NDC's reserve for doubtful accounts and related charge-offs and recoveries for fiscal year 2003 and fiscal year 2004 reveals a pattern strongly suggesting that Defendants concealed overstated revenues for fiscal year 2003 and 2004 by increasing NDC's provision in the fourth quarter of both years and taking a large, anomalous charge for uncollectible accounts receivable ...." (*Id.*) The Complaint alleged

the first three quarters of fiscal year 2003 NDC provisioned at a modest rate and actually reported net recoveries on accounts receivable previously written off ... [but] in the fourth quarter (ended May 30, 2003, and incidentally, the quarter in which NDC's independent auditors began to review the Company's financials in preparation for the filing of the Form 10-K), NDC increased its allowance for doubtful accounts by $4.26 million, nearly seven times the average for the three previous quarters.

(Compl. ¶ 68.) DeKalb also alleged that "NDC charged-off over $6.1 million in uncollectible accounts receivable." (*Id.*) The Second Amended Complaint states that "[i]n fiscal, 2004, in spite of NDC's special review of its revenue recognition practices and reserves prior to the issuance of its third quarter results, the Company once again took an anomalous charge against its reserve of approxi-

mately $6.7 million, or 78% of its reserve [and] failed to give any explanation for these year-end results[.]" (*Id.*) DeKalb alleged that this charge was "highly irregular given that NDC had purportedly experienced net recoveries for the first three quarters of fiscal year 2003 and modest provisioning *1269 and charge offs for the first three quarters of fiscal 2004." (*Id.*)

DeKalb has not alleged any facts that show E&Y was actually aware or should have known that NDC recklessly "concealed overstated revenues." *See Bryant, 187 F.3d at 1287* (adopting the recklessness standard). DeKalb does not allege facts that show that such increased allowances were so irregular as to put an auditing company on notice for fraud. *See Ziemba, 256 F.3d at 1210* (dismissing a complaint where auditing firm was not "tipped off"). The Second Amended Complaint states NDC chose the fourth quarter to start increasing the allowances for doubtful accounts "incidentally" at the same time E&Y "began to review the Company's financials." Since DeKalb has not alleged that E&Y knew about the alleged reason for the increased "irregular" allowance for doubtful accounts, or should have known about NDC's improper revenue recognition, DeKalb failed to plead facts giving rise to a strong inference of scienter.

B

DeKalb alleged that "during March 2004, E&Y was notified by a management level employee in the Physician Services unit of the dire situation facing that business segment-that accounts receivable were very high as a result of aggressive channel-stuffing practices, which rendered the unit's reported revenues highly suspect." (Compl. ¶ 61.) As a result of this notification, "the Company and Defendants were forced to begin addressing the problem." (*Id.*) The Second Amended Complaint does not assert that E&Y had knowledge of wrongdoing before March of 2004 and does not allege facts demonstrating that E&Y acted with reckless disregard after E&Y was informed of the problem. On the contrary, DeKalb alleged that when E&Y was "notified" of a "dire situation," E&Y took action. DeKalb has not pled facts that indicate E&Y's response to the notice was highly unreasonable or an extreme departure from the standards of ordinary care.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

466 F.3d 1255
466 F.3d 1255, Fed. Sec. L. Rep. P 93,976, 20 Fla. L. Weekly Fed. C 26
(Cite as: 466 F.3d 1255)

Page 15

C

[21] DeKalb's remaining allegations pertain to violations of GAAP or GAAS. "Allegations of GAAS or GAAP, standing alone, do not satisfy the particularity requirement of Rule 9(b)." *Ziemba, 256 F.3d at 1208.* Such allegations do not create a strong inference of recklessness because "[t]hey merely suggest that either management or the accountant missed something, and may have failed to prepare or review the financial statements in accordance with an accepted standard of reasonable care." *Reiger v. Price Waterhouse Coopers LLP, 117 F.Supp.2d 1003, 1010 (S.D.Cal.2000),* aff'd sub nom. *DSAM Global Value Fund v. Altris Software, Inc., 288 F.3d 385 (9th Cir.2002).*

In the Second Amended Complaint, DeKalb alleged that E&Y's audit report of July 21, 2003 "falsely represented that E&Y had conducted its audit for NDC's year end 2003 financial statements in accordance with GAAS, and that NDC's financial statements conformed with GAAP." (Compl. ¶ 151.) DeKalb alleged that E&Y violated GAAS by failing exercise due professional care, failing to design proper audit procedures, and by "failing to expand or otherwise properly conduct its audit to detect the understatement in the allowance for doubtful accounts ...." (Compl. ¶¶ 156, 165, 168.) DeKalb also alleged that "E&Y failed to obtain sufficient competent evidential matter" with regards to write-offs, software capitalization, and improper revenue recognition. (Compl. ¶ 166.) DeKalb goes on to allege that these GAAS violations were caused by "E&Y's failure to qualify, modify or abstain from issuing its audit opinions, when *1270 it knew or recklessly turned a blind eye to NDC's accounting manipulations ...." (Compl. ¶ 158.)

While the DeKalb broadly claims that E&Y failed to design and implement proper auditing procedures, DeKalb never describes how E&Y failed to do so. For example, DeKalb refers to the American Institute of Certified Public Accountants' Codification of Statement on Auditing Standards, but DeKalb does not allege how E&Y violated each section. DeKalb alleged that if E&Y had not violated GAAP and GAAS the supposed fraud would not have taken place. (Compl. ¶ 158) However, DeKalb may not "establish scienter by alleging that the auditor would have discovered the fraud had it not violated

GAAS." *In re Spear & Jackson Sec. Litig., 399 F.Supp.2d at 1363* (citing *In re Eagle Bldg. Tech. Inc., Sec. Litig., 319 F.Supp.2d at 1328*). This is merely an allegation of negligence.

DeKalb states that E&Y "recklessly turned a blind eye" to the problems at NDC. But merely alleging scienter in general, conclusory terms does not meet the particularity requirement. 15 U.S.C. § 78u-4(b)(2). The District Court did not err in granting E&Y's motion to dismiss.

V

[22][23] DeKalb waived its right to file a third amended complaint by filing the instant appeal. But that does not moot the issue because a question remains as to whether the restrictions on further amendment were overly burdensome. Federal Rule of Civil Procedure Rule 15(a) states that leave to amend "shall be freely given when justice so requires."[FN9] Denial of leave to amend is reviewed for abuse of discretion. *Baez v. Banc One Leasing Corp., 348 F.3d 972, 973 (11th Cir.2003).* In *Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)* the Supreme Court declared that trial courts have broad discretion in permitting or refusing to grant leave to amend. *Id. at 182, 83 S.Ct. 227.* "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.' " *Id.*

FN9. Rule 15(a) provides, in pertinent part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be given freely when justice so requires.

DeKalb argues the District Court erred in placing restrictions upon its right to further amend its Complaint because the District Court incorrectly premised the restrictions on "the interest of fairness and to manage this litigation effectively." DeKalb also argues that the District Court did not adhere to the factors in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). DeKalb's argument lacks merit because the District Court did not deny DeKalb leave to amend. The District Court explicitly considered at least two of the *Foman* factors in fashioning the restrictions placed on DeKalb's right to further amendment of its Complaint.

[24] In discussing the issue of leave to amend, the District Court made the following comments: "The Eleventh Circuit requires leave to amend be granted where a *1271 more carefully drafted complaint might state a claim. Here, the Court was inclined to deny Plaintiff's request for leave to amend the Second Amended Complaint." *In re NDCHealth Corp., Inc. Securities Litigation,* No. 1:04-cv-0970, slip op. at 50. The District Court noted that "Plaintiff previously has amended its complaint twice."

The District Court gave DeKalb leave to amend because NDC's notice to the SEC regarding the restatement of its accounts "may at least be germane to the claims asserted." *In re NDCHealth Corp., Inc. Securities Litigation,* No. 1:04-cv-0970, slip op. at 51 n. 23. However, the District Court placed restrictions on Appellant's right to amend: "Plaintiff may amend its complaint but the amendment is limited to allegations (i) based on information not available to Plaintiff when the Second Amended Complaint was filed and (ii) which bear only on claims already asserted." *Id.* at 52.

[25][26] "[I]n the exercise of sound discretion, the granting of leave to amend can be conditioned in order to avoid prejudice to the opposing party." *Allied Indus. Workers v. Gen. Elec. Co.,* 471 F.2d 751, 756 (6th Cir.) (quoting *Strickler v. Pfister Assoc. Growers, Inc.,* 319 F.2d 788, 791 (6th Cir.1963)), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973). But the conditions placed on a plaintiff's right to amend its Complaint must be reasonable. *See id.* (holding the "requirement that the amendment be filed by a specified date or that the party amending bear a portion of the additional cost to the opposing

party would, in proper circumstances, be reasonable conditions."); *see also Anderberg v. Masonite Corp.,* 176 F.R.D. 682, 687 (N.D.Ga.1997) ("the court may under Rule 15(a), impose costs as a condition of granting leave to amend in order to compensate Defendant and avoid any prejudice caused by the amendment."); *Gen. Signal v. MCI Telecomm. Corp.,* 66 F.3d 1500, 1514 (9th Cir.1995) (same); *Chicago Pneumatic Tool Co. v. Hughes Tool Co.,* 192 F.2d 620, 631 (10th Cir.1951) (holding "it lay well within the range of sound judicial discretion of the court to allow the amendment in toto, to deny it altogether, or to permit it with reasonable conditions and limitations.").

In the instant case, the conditions placed upon DeKalb's right to amend were relatively modest. The District Court merely required that DeKalb limit its amendment to the legal theories already asserted, and permitted DeKalb to assert any new facts to state a claim. DeKalb has failed to demonstrate that these restrictions were unreasonable. Because DeKalb already had ample opportunity to file an amended complaint that meets the heightened pleading requirements of Rule 9(b) and the PSLRA, the District Court did not abuse its discretion by placing those restrictions on DeKalb's right to further amendment.

AFFIRMED.

C.A.11 (Ga.),2006.
Garfield v. NDC Health Corp.
466 F.3d 1255, Fed. Sec. L. Rep. P 93,976, 20 Fla. L. Weekly Fed. C 26

END OF DOCUMENT

Westlaw.

506 F.Supp.2d 1161                                                                              Page 1
506 F.Supp.2d 1161, Fed. Sec. L. Rep. P 94,202
**(Cite as: 506 F.Supp.2d 1161)**

**H**

United States District Court, M.D. Florida,
Tampa Division.
In re: CP SHIPS LTD., SECURITIES LITIGATION.
**Nos. 8-05-MD-1656-T-27TBM, 8:04-CV-1895-T-
27TBM, 8:04-CV-1949-T-27TBM, 8:04-CV-2140-
T-27TBM, 8:05-CV-492-T-27TBM, 8:05-CV-495-
T-27TBM, 8:05-CV-849-T-27TBM, 8:05-CV-
1919-T-27TBM.**

April 6, 2007.

**Background:** Investors brought action against cor-
poration and its officers to recover for securities
fraud in statement of profits and cost savings. Defen-
dants filed motion to dismiss.

**Holding:** The District Court, James D. Whittemore,
J., held that the allegations failed to satisfy particular-
ity requirement for pleading scienter.

Motion granted with leave to amend.

West Headnotes

**[1] Securities Regulation 349B ⬡60.18**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.17 Manipulative, Deceptive
or Fraudulent Conduct
                    349Bk60.18 k. In General. Most
Cited Cases
To state a cause of action for securities fraud, plain-
tiffs are required to allege (1) a misstatement or
omission (2) of a material fact (3) made with scienter
(4) upon which the plaintiff relied (5) that proxi-
mately caused the plaintiff's loss. Securities Ex-
change Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b);
17 C.F.R. § 240.10b-5.

**[2] Federal Civil Procedure 170A ⬡636**

170A Federal Civil Procedure

170AVII Pleadings and Motions
    170AVII(A) Pleadings in General
        170Ak633 Certainty, Definiteness and Par-
ticularity
            170Ak636 k. Fraud, Mistake and Con-
dition of Mind. Most Cited Cases
The particularity requirement for pleading fraud re-
quires a plaintiff to allege the precise statements,
documents or representations made; the time, place
and person responsible for the statements; the content
and manner in which the statements misled plaintiff;
and what defendant gained by the alleged fraud.
Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[3] Securities Regulation 349B ⬡60.51(2)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 In General
                        349Bk60.51(2) k. Scienter. Most
Cited Cases
    (Formerly 349Bk60.51)
Particularity requirement of Private Securities Litiga-
tion Reform Act (PSLRA) alters the usual contours
of a ruling on motion to dismiss for failure to state a
claim because, while a court continues to give all
reasonable inferences to plaintiffs, those inferences
supporting scienter must be strong ones. Private Se-
curities Litigation Reform Act of 1995, § 101(b), 15
U.S.C.A. § 78u-4(b)(2); Fed.Rules Civ.Proc.Rule
12(b)(6), 28 U.S.C.A.

**[4] Securities Regulation 349B ⬡60.51(2)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 In General
                        349Bk60.51(2) k. Scienter. Most
Cited Cases
    (Formerly 349Bk60.51)
A complaint alleging with particularity that a defen-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

506 F.Supp.2d 1161
506 F.Supp.2d 1161, Fed. Sec. L. Rep. P 94,202
**(Cite as: 506 F.Supp.2d 1161)**

dant acted with a severely reckless state of mind states a securities fraud claim under the Private Securities Litigation Reform Act (PSLRA). Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b).

**[5] Securities Regulation 349B** 🔑60.45(1)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.43 Grounds of and Defenses to Liability
               349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
                  349Bk60.45(1) k. In General. Most Cited Cases
"Severe recklessness" satisfying scienter requirement of securities fraud claim includes highly unreasonable omissions or misrepresentations that involve an extreme departure from the standards of ordinary care and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[6] Securities Regulation 349B** 🔑60.51(2)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.51 In General
                  349Bk60.51(2) k. Scienter. Most Cited Cases
    (Formerly 349Bk60.51)
Scienter may be inferred from the aggregation of all alleged particularized facts in the securities fraud complaint. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[7] Securities Regulation 349B** 🔑60.51(2)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation

            349Bk60.50 Pleading
               349Bk60.51 In General
                  349Bk60.51(2) k. Scienter. Most Cited Cases
    (Formerly 349Bk60.53)
Investors' allegations of securities fraud concerning profits and cost savings prior to net income restatements failed, even in the aggregate, to satisfy particularity requirement for pleading scienter; investors did not allege that officers were confronted about a practice of under-accruing costs or that they discussed such a practice, no allegation claimed that internal reports were accurate and that officers actually knew of contradiction between public statements and correct numbers or were severely reckless in making the statements, investors failed to allege facts explaining violation of accounting principles, and chief executive officer's (CEO) stock sales did not alone give rise to a strong inference of scienter given the absence of any specific allegations of his involvement in the alleged fraud. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5.

**\*1162** Christopher S. Polaszek, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, Boca Raton, FL, for CP Ships Ltd. Securities Litigation.
Michael A. Swick, Law Office of Michael A. Swick LLP, Nadeem Faruqi, Faruqi & Faruqi, LLP, New York, NY, for Geoffrey Gottfried.
Charles Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD, Jeffrey M. Norton, Wechsler, Harwood, LLP, New York, NY, for Billy R. Hood.
Joseph E. White, III, Saxena White P.A., for Geoffrey Gottfried, Billy R. Hood, James W. Nelson.
Maya S. Saxena, Saxena White P.A., Boca Raton, FL, for Geoffrey Gottfried, James W. Nelson.
Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for James W. Nelson.
Darren J. Robbins, William S. Lerach, Lerach Coughlin Stoia & Robbins LLP, San Diego, CA, for Raymond Tyler.
Evan Jason Smith, Brodsky & Smith, L.L.C., Bala Cynwyd, PA, for Kirvin Hendrix.
Gregory M. Egelston, Bernstein, Liebhard & Lifshitz, LLP, New York, NY, for Samuel J. Weinberg.
Arlan Marshall, pro se.
Shaun N. Rai, pro se.
Thomas Frank Linn, Law Office of Thomas F. Linn, Lone Tree, CO, pro se.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

506 F.Supp.2d 1161
506 F.Supp.2d 1161, Fed. Sec. L. Rep. P 94,202
**(Cite as: 506 F.Supp.2d 1161)**

Amy L. Barton, Daniel J. Kramer, Jessica Sombat, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, Patricia Claire Campbell, Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Todd E. Gordinier, Stradling Yocca Carlson and Rauth, Newport Beach, CA, for CP Ships Ltd.

Tracy A. Nichols, Holland & Knight LLP, Miami, FL, Keith S. Shotzberger, Holland & Knight, LLP, Tampa, FL, for CP Ships Ltd, Ian Webber.

*1163 Todd E. Gordinier, Stradling Yocca Carlson and Rauth, Newport Beach, CA, for Ray Miles.

Todd E. Gordinier, Stradling Yocca Carlson and Rauth, Newport Beach, CA, for Ian Webber.

Roberta A. Kaplan, Paul, Weiss, Rifkind, Wharton and Garrison, New York, NY, for Frank Halliwell.

Todd E. Gordinier, Stradling Yocca Carlson and Rauth, Newport Beach, CA, for Frank Halliwell, John D. McNeil.

### ORDER

JAMES D. WHITTEMORE, District Judge.

**BEFORE THE COURT** is Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (Dkt.34), to which Plaintiffs have responded in opposition (Dkt.36). The Court heard oral argument on January 27, 2006. (Dkts.52, 82).[FN1] Upon consideration, Defendants' motion to dismiss is GRANTED, with leave to amend.

> FN1. Although the motion to dismiss was originally filed on August, 9, 2005, the parties stipulated to a stay of proceedings, effective March 3, 2006, to conduct settlement negotiations. (Dkts.60, 62). At the parties' request, the case was reopened on November 14, 2006. (Dkt.84).

### Background

Plaintiffs filed their Consolidated Amended Class Action Complaint (Dkt.31) alleging violations of §§ 10(b) and 20(a) of the Exchange Act. In the instant motion, Defendants move to dismiss the Amended Complaint (Dkt.31) pursuant to Fed. R. Civ. Pro. 9(b) and 12(b)(6), as well as the Private Securities Litigation Reform Act ("PSLRA"), arguing that Plaintiffs fail to allege scienter with the requisite level of particularity. The pertinent allegations are set forth below.

Defendant CP Ships, LTD. ("CP Ships") is a non-U.S. corporation with its principal place of business in Tampa, Florida. (Dkt.31, ¶ 20). CP Ships is a container shipping company that provides international transportation of industrial and consumer goods for approximately 23,700 customers worldwide. (Dkt.31, ¶¶ 20, 32). Lead Plaintiffs filed this action on behalf of purchasers of CP Ships securities between January 29, 2003 and August 9, 2004 ("the class period"). (Dkt. 31 ¶ 1). Defendant Ray Miles was the President, Chief Executive Officer (CEO), and member of the Board of the Company during the class period. (Dkt.31, ¶ 21). He became Chairman in May 2004, when Defendant Frank Halliwell was appointed CEO. (*Id.*) Before becoming CEO, Halliwell was Chief Operating Officer (COO) and a director and member of the executive committee during the class period. (Dkt.31, ¶ 23). Defendant Ian Webber was Chief Financial Officer (CFO) during the class period. (Dkt.31, ¶ 22).

*1. Alleged misrepresentations and corrective disclosures*

Plaintiffs allege that Defendants made numerous misrepresentations during the class period regarding CP Ships' profits and cost savings, when, in fact, CP Ships' costs were being regularly under-accrued. For instance, on January 29, 2003, CP Ships announced a $34 million profit for the fourth quarter 2002, which was attributed, in part, to "significant cost reduction." (Dkt.31, ¶¶ 71, 72). This filing was certified by Miles and Webber. (Dkt.31, ¶¶ 75-76). On April 7, 2003, Defendants filed their 2002 year end results with the SEC, reporting operating income of $83 million and again citing "significant cost reduction." (Dkt.31, ¶ 74). On July 21, *1164 2003, Defendants announced that profits for second quarter 2003 were double the profits for second quarter 2002, due in part to lower ship network costs. (Dkt.31, ¶ 82). On October 29, 2003, Defendants announced that operating profits were up 29% for the third quarter 2003. (Dkt.31, ¶ 87). On February 5, 2004, Defendants announced $100 million in cost reductions and a $49 million profit for the fourth quarter 2003. (Dkt.31, ¶ 92). On April 15, 2004, Defendants released their 2003 year end results, reporting operating income of $131 million and citing "cost savings." (Dkt.31, ¶¶ 96-97). This form was signed by each individual defendant. (Dkt.31, ¶ 96).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

506 F.Supp.2d 1161
506 F.Supp.2d 1161, Fed. Sec. L. Rep. P 94,202
**(Cite as: 506 F.Supp.2d 1161)**

On May 11, 2004, however, Defendants announced a "one-off and non-recurring" $8 million downward restatement of reported 2003 net income. (Dkt.31, ¶¶ 7, 107). During a conference call, Miles stated that the revision did not affect the first quarter 2004. (Dkt.31, ¶¶ 110). On May 19, 2004 and May 26, 2004, Miles sold stock options and shares for a profit of approximately $3.85 million. (Dkt.31, ¶ 134). Between May 20, 2004 and June 4, 2004, three other non-defendant executives also sold shares for profits of $26,806.00, $25,681.71, and $175,528.73, respectively. (Dkt.31, ¶ 137).

On August 9, 2004, Defendants announced that the implementation of their new SAP accounting system revealed insufficient accruals for certain costs. (Dkt.31, ¶ 9).[FN2] Defendants estimated that 2003 reported profits would be reduced $22 million to $27 million, in addition to the earlier $8 million downward revision. (Dkt.31, ¶ 9). Defendants also estimated that 2002 net income would be reduced by $7 million, and that the first quarter 2004 net income would be reduced by $6 million. (Dkt.31, ¶ 9). Immediately following this announcement, shares of CP Ships' stock fell $3.70 per share, a 22.4% decline. (Dkt.31, ¶ 10). On August 16, 2004 Defendants announced the actual restatement figures, which totaled $41 million. Specifically, 2003 income was revised down by $29 million, 2002 income was revised down by $7 million, and first quarter 2004 income was revised down by $5 million. (Dkt.31, ¶ 12).

> FN2. During 2003 and January 2004, CP Ships implemented a SAP accounting system. (Dkt.31, ¶ 4). During the implementation, CP Ships also ran its prior accounting system. (*Id.*)

2. *Scienter*

Plaintiffs' allegations of scienter are premised on statements by twelve confidential sources ("CS"). The names of the sources are not disclosed, but their position and time at the company is alleged in general terms. (Dkt.31, ¶ 14). Essentially, Plaintiffs allege, based on these sources, that Defendants received detailed cost information through a variety of channels and were therefore severely reckless in not realizing that there were cost under-accruals, or that they had actual knowledge of cost under-accruals.

According to CS-1, a former accounting employee, Halliwell and other unidentified executives received weekly Cost Per Teu Reports, which included the components used to measure this cost. (Dkt.31,145). CS-1 also states that executives received various other weekly, bimonthly, or monthly reports, including a Fleet Report, a Risk Management Report, and a Vessel Option Periods Report. (Dkt.31, ¶ 47). Plaintiffs allege that the executives tracked critical costs such as fuel consumption, which was one of the highest profile costs in the company, and exchange rates. (Dkt.31, ¶¶ 48-51). For instance, CS-3, a former *1165 accounting supervisor, states that the manager of cost reporting made monthly reports to Halliwell and Webber on fuel costs, including whether the fuel consumption exceeded or was less than budget, as well as on other budget costs. (Dkt.31, ¶¶ 53-54). According to CS-9, who worked in a variety of planning, design, analysis, and other positions, Halliwell was a micro-manager who looked at "every number." (Dkt.31, ¶ 69). CS-3 states that after receiving monthly reports, Halliwell would complain about the figures and that the manager of cost accounting would say that he had to change the reports. (Dkt.31, ¶ 55).

CS-2, a former accounting department financial analyst, states that "when estimating fuel charges and other expenses for accrual purposes, there were always under-accruals of the actual costs" and that s/he was "forbidden by management" from speaking to the providers of the relevant accrual numbers. (Dkt.31, ¶ 63). CS-3 states that payments to vendors were often delayed because of low cash flow and that Halliwell and Webber were aware of these late payments. (Dkt.31, ¶ 59). CS-9 states that different companies within CP Ships did not want to own costs, so the costs were moved from one division to another. (Dkt.31, ¶ 70). Although Defendants publicly attributed the under-reporting to errors in the conversion to the SAP accounting system, Plaintiffs allege that this was merely an excuse for the under-reporting. (Dkt.31, ¶ 68). For instance, CS-3 states that when one or two million dollars appeared to be missing, "in the end, we would write everything off to SAP."(*Id.*)

Plaintiffs allege that the Defendants violated several Generally Accepted Accounting Principles (GAAP). (Dkt.31, ¶¶ 143-53). They also allege that this under-reporting was motivated by several goals: to raise money in securities offerings, to allow Miles and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

506 F.Supp.2d 1161
506 F.Supp.2d 1161, Fed. Sec. L. Rep. P 94,202
(Cite as: 506 F.Supp.2d 1161)

other executives to profit from their sales of stock at artificially inflated prices; to allow the individual defendants to profit from bonuses tied to stock performance; and to facilitate the negotiation of favorable terms for a new $525 million facility. (Dkt.31, ¶¶ 13, 130).

### Standards

A court may grant a motion to dismiss "only when the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir.2004) (internal quotation omitted). A court will accept as true all well pled factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In considering a motion to dismiss, the court is generally confined to examining the four corners of the complaint, but the court may take judicial notice of relevant documents publicly filed with the Securities Exchange Commission ("SEC"). *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1287 (11th Cir.1999).

[1][2] Notwithstanding the low threshold for surviving a motion to dismiss, Congress imposed heightened pleading requirements for claims alleging violations of section 10(b) and Rule 10b-5 through passage of the PSLRA. 15 U.S.C. § 78u-4(b)(1); *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir.1999). To state a cause of action under Section 10(b) or Rule 10b-5, Plaintiffs are required to allege "(1) a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which the plaintiff relied (5) that proximately caused the plaintiff's loss." *Theoharous v. Fong*, 256 F.3d 1219, 1224 (11th Cir.2001)(*internal citation omitted* ). In their Amended Complaint, Plaintiffs must *1166 "specify each statement alleged to have been misleading, [and the] reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Under Fed.R.Civ.P. 9(b), a plaintiff must allege fraud with particularity. Rule 9(b) requires a plaintiff to allege the precise statements, documents or representations made; the time, place and person responsible for the statements; the content and manner in which the statements misled plaintiff and what defendant gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir.1997).

[3][4][5][6] The PSLRA requires that scienter be pled with particularity. With respect to each act or omission, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This requirement "alters the usual contours of a Rule 12(b)(6) ruling because, while a court continues to give all reasonable inferences to plaintiffs, those inferences supporting scienter must be strong ones." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1264 (11th Cir.2006). In the Eleventh Circuit, "a complaint alleging with particularity that a defendant acted with a severely reckless state of mind" states a claim under the PSLRA. *Bryant*, 187 F.3d at 1283. Severe recklessness includes "highly unreasonable omissions or misrepresentations" that involve "an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* at 1282, n. 18. Scienter may be inferred from the aggregation of all alleged particularized facts in the complaint. *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017 (11th Cir.2004). However, it must be found with respect to each defendant and with respect to each alleged violation of the PLSRA. *Id.* at 1017-18.

### Discussion

[7] Pursuant to *Scientific-Atlanta*, scienter allegations relating to each claimed misstatement must be viewed in conjunction with Plaintiffs' overarching allegations that: (1) Defendants, especially Halliwell, monitored costs at the company through regular reports; (2) Defendants certified certain SEC filings as accurate, although the filings violated GAAP; (3) the $41 million restatement was considerable when compared to CP Ships' net income; and (4) Miles and three non-defendant executives sold stock at a substantial profit three months before the bulk of restatement was announced in August 2004. As discussed below, Plaintiffs' allegations, even when considered in the aggregate, are not sufficiently particularized and therefore do not support the requisite strong inference of scienter.

Plaintiffs have alleged that Defendants monitored the costs of the company through various reports, including a Cost Per Teu Report. In two of the paragraphs

most frequently cited by Plaintiffs in their opposition brief, the Amended Complaint alleges:

> 55. CS-3 further reported that: After receiving the monthly reports from the manager of cost accounting, Halliwell would sometimes come downstairs to cost accounting and complain: "These figures have to be wrong. Check them again." The manager of cost accounting then needed to revise the figures. Sometimes, the manager of cost accounting would need to go upstairs, to hear Halliwell make the same complaint. CS-3 would run into the manager of cost accounting in the elevator afterwards, and the manager would say: "I have to *1167 change the reports. Halliwell didn't like the numbers."

> 63. Although Defendants knew or recklessly disregarded the actual costs that were being incurred, Defendants permitted the accrual figures, for accounting purposes, to be understated. CS-2 a former CP Ships accounting department financial analyst relayed that, when estimating fuel charges and other expenses for accrual purposes, there were always under-accruals of the actual costs. Moreover, CS-2 was forbidden by management from sitting down with the people in the various groups which provided CS-2 with the expense accrual numbers, but just had to accept them. CS-2 also complained to CS-2's manager about the cost estimates used for accruals. CS-2 further explained that s/he was "not the only one to complain" about this in the accounting department. (Dkt.31, ¶ 55, 63).

These allegations do not possess the requisite particularity. Paragraph 63 fails to explain the statement that there were "always" under-accruals and that unidentified persons in "management" forbid CS-2 from talking to other departments. Plaintiffs have not alleged facts regarding the subject matter of the under-accruals, the manner in which they were accomplished, the timing, and most importantly, who directed it and how it was directed. _Garfield,_ 466 F.3d at 1264, n. 7, 1265 (allegations of statements were insufficient where they failed to alleged "what was said at the meeting, to whom it was said, or in what context"); _In re Sunterra Corp. Sec. Litig.,_ 199 F.Supp.2d 1308, 1325 (M.D.Fla.2002) (allegations that emails were sent to individual defendants warning of improper revenue recognition were insufficient evidence of scienter where they did not describe "the

content of the message, who sent it, or why it was reliable"). Similarly, Paragraph 55 is devoid of any allegation that Halliwell did anything other than complain about the numbers.[FN3] Indeed, Plaintiff alleges that computer mistakes did occur and that Halliwell knew when these cost reports were wrong due to computer problems. (Dkt.31, ¶ 56).

> FN3. In their opposition brief, while complaining that "Defendants mischaracterize the Complaint," Plaintiffs themselves take liberties with and mischaracterize the allegations of the Amended Complaint. (Dkt. 36 at 4, 12, 13, 14). For example, at page one of their brief, Plaintiffs argue that "... employees were instructed, sometimes by the Individual Defendants, to change cost reports and use deliberate under-accruals of costs." No such allegation can be found in the Amended Complaint. Referencing Paragraph 55 of the Amended Complaint, at page four, Plaintiffs argue that "Halliwell frequently demanded that the manager of cost accounting 'change' the monthly cost reports because Halliwell 'didn't like the numbers.' " At page twelve, Plaintiffs argue that Halliwell "frequently demanded that the manager of cost-accounting 'change' the monthly cost reports ...," again referencing Paragraph 55 of the Amended Complaint. However, Paragraph 55 contains no such allegations. Referencing Paragraph 68 of the Amended Complaint, Plaintiffs argue that "[e]mployees were also encouraged to falsely blame cost discrepancies on the SAP conversion."There is no such allegation in Paragraph 68. Counsel are cautioned that such tactics are not viewed favorably by the Court.

Furthermore, there is no allegation, let alone a detailed allegation, that the Defendants were confronted about a practice of under-accruing costs or that they discussed such a practice. _Compare In re Sunbeam,_ 89 F.Supp.2d 1326, 1338 (S.D.Fla.1999) (finding scienter was pled where the complaint alleged, among other facts, that two defendants were "directly confronted" about revenue recognition practices and detailed the instances where the manipulation of financial results was discussed and joked about); *1168_In re Catalina Marketing Corp. Sec. Litig.,_ 390

F.Supp.2d 1110, 1115 (M.D.Fla.2005) (complaint alleged that defendants were "regularly confronted" with declining sales and "personally warned" of the impending earnings miss); *with In re Sunterra Corp. Sec. Litig.,* 199 F.Supp.2d at 1329-30 (allegations that defendant "initiated policies whereby canceled contracts or otherwise uncollectible mortgage receivables were not removed from the books" was too conclusory).

Plaintiffs' theory that Defendants must have known of the cost under-accruals because of internal reports that the executives used to keep current on the day-to-day operations "would result in an inference of scienter being available in any case in which a company with a reporting system fails to meet forecasted revenues," or issues a restatement of income. *Bryant v. Avado Brands, Inc.,* 100 F.Supp.2d 1368,1379 (M.D.Ga.2000), *rev'd on other grounds,* 252 F.3d 1161 (11th Cir.2001). In the end, Plaintiffs have failed to include any allegation showing that the internal reports were accurate and that Defendants actually knew that their public statements contradicted the correct numbers, or were severely reckless in making these statements. *Abrams v. Baker Hughes, Inc.,* 292 F.3d 424, 432-33 (5th Cir.2002) (absent allegation that corporate reports were contrary to released information, there was no scienter). Plaintiffs' allegations simply do not support a strong inference of severe recklessness or actual knowledge of fraud.

Plaintiffs have also argued that the Defendants' certification of the accuracy of CP Ships' SEC filings demonstrates scienter. However, the Eleventh Circuit has specified that "a Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements." *Garfield,* 466 F.3d at 1266. This requirement is met when the person has "reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions." *Id.*

Plaintiffs conclusorily allege that Defendants engaged in several GAAP violations and a violation of FASB 5, but fail to allege any facts explaining these allegations. (*See* Dkt. 31, ¶ 148-151). *Compare Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1208 (11th Cir.2001) (finding plaintiffs failed to allege any tips, letters, or conversations or other facts indicating

severe recklessness); *In Re AFC Enter., Inc. Sec. Litig.,* 348 F.Supp.2d 1363, 1372 (N.D.Ga.2004) (noting that GAAP violations were errors in accruals, not attempts to fabricate revenue or conceal expenses); *with In re MicroStrategy, Inc. Sec. Litig.,* 115 F.Supp.2d 620, 635-36 (E.D.Va.2000) (finding adequate allegations of scienter where complaint alleged "in some detail the magnitude of the restated financials and the pervasiveness and repetitiveness of MicroStrategy's GAAP violations; the simplicity of the accounting principles violated in this case; and the importance of the contracts involved."); *In re Catalina Marketing Corp. Sec. Litig.,* 390 F.Supp.2d at 1115 (complaint alleged two methods by which financial statements were manipulated).

Plaintiffs also rely on the amount of the August 2004 restatement. Specifically, they allege that first quarter 2004 net income was overstated by 62% ($5 million), 2003 net income was overstated by 35% ($29 million), and 2002 net income was overstated by 13% ($7 million). (Dkt.31, ¶ 142). The restatements for 2003 and first quarter 2004 are not inconsistent when compared to CP Ship's net income. However, those amounts are not "glaringly obvious" as they involve less than 1% of **\*1169** total revenues. *In re AFC Enter., Inc. Sec. Litig.,* 348 F.Supp.2d at 1373 n. 3 (noting that 50% overstatement of net income was not glaringly obvious where it was less than 1% of revenues); *cf. In re Catalina Marketing Corp. Sec. Litig.,* 390 F.Supp.2d at 1115 (overstatement of income of 43% *supports* an inference of scienter); *Zuckerman v. Smart Choice Auto. Group, Inc.,* No. 6:99-CV-237, 2000 WL 33996254 at \*2 (M.D.Fla., Aug.29, 2000) (instead of previously reported net income of $4.6 million company had a net loss of $6.9 million).[FN4] The issuance of a restatement, even involving a considerable change in numbers, cannot support a securities fraud lawsuit, absent other evidence of scienter.

> FN4. Plaintiffs argue that "[t]he focus on revenue, an old chestnut that securities fraud defendants frequently try on judges and juries, is entirely specious. What matters most to investors is income, not revenues...." *Crowell v. Ionics, Inc.,* 343 F.Supp.2d 1, 18 (D.Mass.2004).

Finally, Plaintiffs' allegations of motive and opportunity are insufficient to support the requisite inference

of scienter. Miles' stock sales, which occurred shortly after the May 2004 restatement and three months before the August 2004 restatement, do not, in and of themselves, give rise to a strong inference that he acted with scienter, given the absence of any specific allegations of Miles' involvement in the alleged fraud.[FN5] Furthermore, the two principal insiders described in the Amended Complaint, Halliwell, the COO and CEO, and Webber, the CFO, are not alleged to have made any suspicious stock trades or sales. *Bryant,* 100 F.Supp.2d at 1385 (trades by three individual defendants did not support a strong inference of scienter where two principal insiders did not make trades); *Abrams,* 292 F.3d at 435 (sale by one defendant is not a strong inference where other defendants do not sell shares during class period). Similarly, generic allegations that defendants were motivated to raise capital for the company and to obtain bonuses for themselves are unavailing. If such allegations were sufficient to demonstrate scienter, every executive and corporation would be exposed to liability. *Abrams,* 292 F.3d at 434.

> FN5. As Plaintiffs point out, during an August 16, 2004 conference call, Webber stated that the cost accrual problem did not become apparent until June 2004. (Dkt.31, ¶ 120). There is no support in the pertinent allegations of the Amended Complaint for Plaintiffs' contention that Miles, or the other defendants, knew of the need for the restatement when their stock sales were made. (Dkt. 36 at 19-20).

This Court recognizes the need to consider an inference that may be drawn when all of Plaintiffs' allegations are considered in the aggregate. These allegations, however, lack the particularity mandated by the PLSRA and fail to raise the necessary *strong* inference that Defendants engaged in "highly unreasonable omissions or misrepresentations" that involved "an extreme departure from the standard of ordinary care." *Bryant,* 187 F.3d at 1282 n. 18. Halliwell's and Webber's receipt of company reports and Halliwell's statements that he did not like the reported numbers do not lead to a strong inference that Defendants acted with the requisite severe recklessness or actual knowledge of cost under-accruals. Plaintiffs reliance on generic allegations of GAAP violations, the size of the restatement, and Defendants' alleged motives are not sufficient without more. These alle-

gations, even taken in the aggregate, do not meet the heightened pleading requirement of the PLSRA. *See. e.g., Bryant,* 100 F.Supp.2d 1368 (finding scienter was not adequately pled on facts similar to the instant case).

**\*1170 *Plaintiffs State a Claim under § 20(a) against Individual Defendants***

The Individual Defendants move to dismiss Count II of the Complaint, in which Plaintiffs assert that they are liable as controlling persons under § 20(a) of the Exchange Act. As the Court has concluded that the Amended Complaint fails to state a claim against CP Ships under § 10(b), Defendants' motion to dismiss Count II is due to be granted. *Theoharous,* 256 F.3d at 1227.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (Dkt.34) is **GRANTED.** Plaintiffs are granted leave to file an amended complaint within forty-five (45) days of the date of this Order.

**DONE AND ORDERED** in chambers this *5th* day of April, 2007.

M.D.Fla.,2007.
In re CP Ships Ltd., Securities Litigation
506 F.Supp.2d 1161, Fed. Sec. L. Rep. P 94,202

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

358 F.Supp.2d 1130                                                                                    Page 1
358 F.Supp.2d 1130, Fed. Sec. L. Rep. P 93,255, 18 Fla. L. Weekly Fed. D 363
(Cite as: 358 F.Supp.2d 1130)

C

In re Recoton Corp. Securities Litigation
M.D.Fla.,2005.

United States District Court,M.D. Florida,
Orlando Division.
In re: RECOTON CORPORATION SECURITIES
LITIGATION
No. 6:03-CV-734-ORL-28KRS, 6:03-CV-836-
ORL-28KRS, 6:03-CV-861-ORL-28KRS, 6:03-
CV-884-ORL-28KRS, 6:03-CV-862-ORL-28KRS,
6:03-CV-946-ORL-28KRS.

Feb. 23, 2005.

**Background:** Shareholders filed putative
securities fraud class action seeking relief against
individual corporate officers and directors and
corporation's outside auditor. Defendants moved to
dismiss complaint.

**Holdings:** The District Court, Antoon, J., held
that:

(1) shareholders pled with sufficient particularity
claim that defendants maintained inflated, obsolete
inventory;

(2) shareholders failed to plead with sufficient
particularity claim that defendants improperly
concealed fact that company was losing or in danger
of losing important customers;

(3) shareholders failed to plead with sufficient
particularity claim that auditor committed securities
fraud;

(4) shareholders sufficiently pled inference of
scienter with regard to company's chief executive
officer (CEO) and chief financial officer (CFO); but

(5) shareholders failed to adequately plead loss
causation.

Motion granted.

West Headnotes

**[1] Securities Regulation 349B** 🔑60.18

349B Securities Regulation
  349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
        349Bk60.17 Manipulative, Deceptive or
Fraudulent Conduct
          349Bk60.18 k. In General. Most
Cited Cases
To allege securities fraud under Rule 10b-5, plaintiff
must show: (1) misstatement or omission, (2) of
material fact, (3) made with scienter, (4) on which
plaintiff relied, (5) that proximately caused his injury.
Securities Exchange Act of 1934, § 10(b), as
amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. §
240.10b-5.

**[2] Federal Civil Procedure 170A** 🔑636

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(A) Pleadings in General
      170Ak633 Certainty, Definiteness and
Particularity
        170Ak636 k. Fraud, Mistake and
Condition of Mind. Most Cited Cases
Fraud is pled with sufficient particularity if complaint
sets forth: (1) precisely what documents or oral
representations were made; and (2) time and place of
each such statement and person responsible for
making, or, in case of omissions, not making, same;
and (3) content of such statements and manner in
which they misled plaintiff; and (4) what defendants
obtained as consequence of fraud. Fed.Rules
Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[3] Securities Regulation 349B** 🔑60.51

349B Securities Regulation
  349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
        349Bk60.50 Pleading
          349Bk60.51 k. In General. Most
Cited Cases
Private Securities Litigation Reform Act (PSLRA)
requires that securities fraud complaint contain: (1)
factual specificity as to alleged misleading or omitted
statements, and (2) particular facts raising strong
inference that defendant acted with required state of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1130                                                                                    Page 2
358 F.Supp.2d 1130, Fed. Sec. L. Rep. P 93,255, 18 Fla. L. Weekly Fed. D 363
**(Cite as: 358 F.Supp.2d 1130)**

mind. Securities Exchange Act of 1934, § 21D(b), as amended, 15 U.S.C.A. § 78u-4(b).

**[4] Securities Regulation 349B** ☞60.45(1)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.43 Grounds of and Defenses to Liability
            349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
            349Bk60.45(1) k. In General.
Most Cited Cases
Scienter necessary to support securities fraud claim under § 10(b) is satisfied by showing that defendant had intent to deceive manipulate or defraud or that defendant acted with severely reckless state of mind. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[5] Securities Regulation 349B** ☞60.45(1)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.43 Grounds of and Defenses to Liability
            349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
            349Bk60.45(1) k. In General.
Most Cited Cases
While averments of motive and opportunity to commit fraud may be relevant to showing of severe recklessness, such allegations, without more, are not sufficient to demonstrate requisite scienter in securities fraud action under § 10(b). Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[6] Securities Regulation 349B** ☞60.45(1)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.43 Grounds of and Defenses to Liability
            349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
            349Bk60.45(1) k. In General.

Most Cited Cases
In securities fraud action, scienter must be found with respect to each defendant and with respect to each alleged violation. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[7] Securities Regulation 349B** ☞60.53

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
          349Bk60.50 Pleading
            349Bk60.53 k. Misrepresentation.
Most Cited Cases
Shareholders pled with sufficient particularity claim that corporate officers and directors committed securities fraud by maintaining inflated, obsolete inventory for purpose of creating increased borrowing potential against such inventory, where complaint set forth in detail statements alleged to be false, when statements were made, who made statements, why statements were false, and what defendants stood to gain in making statements. Securities Exchange Act of 1934, § § 10(b), 21D(b), as amended, 15 U.S.C.A. § § 78j(b), 78u-4(b); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[8] Securities Regulation 349B** ☞60.53

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
          349Bk60.50 Pleading
            349Bk60.53 k. Misrepresentation.
Most Cited Cases
Shareholders pled with sufficient particularity claim that corporate officers and directors committed securities fraud by making material omission concerning company's purposeful delay in processing credits, which resulted in overstatement of accounts receivable, in order to retain and increase financing from lenders, despite contention that complaint failed to allege that delays caused non-recognition at month or quarter's end, or in any publicly-filed financial statement, where complaint stated that officer instructed finance executive "to delay recognizing, in the Company's financial statements, a substantial portion of customer returns," that delay yielded overstatement of $3 to $4 million in company's accounts receivable balances, and that reported

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

358 F.Supp.2d 1130
358 F.Supp.2d 1130, Fed. Sec. L. Rep. P 93,255, 18 Fla. L. Weekly Fed. D 363
(Cite as: 358 F.Supp.2d 1130)

Page 3

figures overstated accounts receivable. Securities Exchange Act of 1934, § § 10(b), 21D(b), as amended, 15 U.S.C.A. § § 78j(b), 78u-4(b); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ☞1831**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination
               170Ak1831 k. Fact Issues. Most Cited Cases
Issue of whether $3 to $4 million overstatement of company's accounts receivable was material involved fact question that could not be resolved on motion to dismiss securities fraud action against corporate officers and directors. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[10] Securities Regulation 349B ☞60.51**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.51 k. In General. Most Cited Cases
Shareholders failed to plead with sufficient particularity claim that corporate officers and directors committed securities fraud by recognizing sales before time period for product returns had expired and by recording certain product swaps as simultaneous sale of inventory and purchase of inventory, where company disclosed that provisions were made for "anticipated discounts, returns and allowances," and complaint failed to specify how often allegedly improper returns and swaps occurred, to what severity, and how they affected public financial statements. Securities Exchange Act of 1934, § § 10(b), 21D(b), as amended, 15 U.S.C.A. § § 78j(b), 78u-4(b); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[11] Securities Regulation 349B ☞60.53**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation

            349Bk60.50 Pleading
               349Bk60.53 k. Misrepresentation.
Most Cited Cases
Shareholders failed to plead with sufficient particularity claim that corporate officers and directors committed securities fraud by misrepresenting actual factors underlying company's financial and operational declining results, despite allegation that company insiders attributed declining result to mark-down allowances given to retailers, excessive defective product returns, losses speculating with new product introductions, excess and slow moving inventory, and poor and unstable management, where complaint relied on vague statements of anonymous employees, and failed to show that any particular defendant had knowledge of factors prior to disclosure. Securities Exchange Act of 1934, § § 10(b), 21D(b), as amended, 15 U.S.C.A. § § 78j(b), 78u-4(b); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[12] Securities Regulation 349B ☞60.28(2.1)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
               349Bk60.28 Nondisclosure; Insider Trading
                  349Bk60.28(2) Duty to Disclose or Refrain from Trading
                    349Bk60.28(2.1) k. In General.
Most Cited Cases
Omission is actionable under securities laws only when corporation is subject to duty to disclose omitted facts. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[13] Securities Regulation 349B ☞60.53**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.53 k. Misrepresentation.
Most Cited Cases
Shareholders failed to plead with sufficient particularity claim that corporate officers and directors committed securities fraud by misrepresenting timing of implementation of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.